Ladner et al., Appellants, *v.* Siegel et al.

Argued February 11, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Grover C. Ladner,* for appellants.—The court below having merely interpreted its own decree, the appellate court will not do more than examine the record for the purpose of determining whether that court transcended its jurisdiction: Messmore's Est., 293 Pa. 63; Hummell v. Bishoff, 9 Watts 416; Com. ex rel. v. Heston, 292 Pa. 63; Fullerton v. Peabody, 2 Pa. Superior Ct. 145; Sperry & Hutchins v. McKelvey-Hughes Co., 64 Pa. Superior Ct. 57.

The use of the garage building by the Garden Court tenants amounts to a use of it as a public garage: Penna. Co. v. Sun Co., 290 Pa. 404.

The use of the building for the tenants of the Garden Court, or any other apartment, merely because it happens to belong to one of the owners, is using it as a public garage; otherwise the decree of the court could be evaded in so countless a number of methods as to expose it to ridicule: Phillips v. Donaldson, 269 Pa. 246; George v. Goodovich, 288 Pa. 48; Slingluff v. Tyson, 280 Pa. 206; Mitchell v. Guaranty Corp., 283 Pa. 361; Carney v. Oil Co., 291 Pa. 371.

*Ira Jewell Williams,* with him *Francis Shunk Brown,* for appellee, William M. Anderson.—Appellee did not maintain a public garage within the terms of the decree: Ladner v. Siegel, 293 Pa. 306; George v. Goodovich, 288 Pa. 48; Carney v. Oil Co., 291 Pa. 371.

This court has twice decided that the phrase "public ground" means ground unrestrictedly dedicated to public use: Morrow v. Traction Co., 219 Pa. 619; Com. v. Boro., 201 Pa. 154.

The present use of the garage is a private use.

Appellants argue that the Superior Court had no power to do more than exercise the customary supervisory jurisdiction over an appeal in a contempt case and interpreted a decree of the court below confirmed by the Supreme Court. This is in direct conflict with Scranton v. Peoples Coal Co., 274 Pa. 63, 68, 69.

W. B. *Saul,* of *Saul, Ewing, Remick & Saul,* for appellee, Clarence R. Siegel.

OPINION BY MR. JUSTICE KEPHART, April 24, 1929:

This appeal is from an order of the Superior Court reversing the court below adjudging the appellees in contempt for violating an injunction decree.

Appellees contemplated the erection of a garage on land situated between 47th, 48th, Spruce and Pine Streets. The garage when built was to be a one-story building with basements underneath, located approximately 65 feet from the street line and having an extension or entrance therefrom to Pine Street. It was to be 160 by 200 feet and would accommodate 429 cars. Surrounding this construction, units of apartment houses were to be erected. They would enclose the garage, starting from the opening on Pine Street and extending along the street lines around the block.

Some twenty-one property owners in the neighborhood instituted an action to enjoin the construction and use of the building then being erected. At the hearing these facts were found: more people in the neighborhood live in apartment houses than in private residences; there are no stores or business places except a drug store, restaurant, commercial swimming pool and the Garden Court Apartment; so much of the neighborhood as is built up is residential in character, the tendency being toward apartment house sections rather than individual residences; private garages, and in a number of cases as many as ten such garages are built in clusters having a common driveway; the neighborhood is not exclusively private and quiet, the streets are used by traffic of all kinds, and some three to four hundred motor vehicles, including trucks, pass every hour on Pine Street; Spruce Street has double car tracks, and many cars are parked in front of Garden Court, where two taxi stands are located.

584

No apartment unit had been started around the garage building and until the units were all constructed the building was to be used temporarily for the storage of cars generally. The use of this building as a public garage was enjoined and, on appeal to this court, the action of the court below was affirmed: Ladner v. Siegel, 293 Pa. 306. Later, appellees wishing to have an interpretation of the decree of the court below, petitioned for a declaratory judgment, to ascertain if the building could be used for the storage of cars from the Garden Court Apartment House, owned or leased by one of the appellees, and located across the street; and, as one of the apartment units around the garage was then in course of construction, whether tenants of this unit would be permitted to use the garage building. We held on appeal that the Declaratory Judgments Act was not to be used to modify or elucidate decrees of court. Appellees thereafter leased one-third of the floor space of the garage for the use of Garden Court Apartment tenants. Possession was taken by 22 auto owners; this precipitated the contempt proceeding, which resulted adversely to appellees. The cause was appealed to the Superior Court where the contempt order was reversed.

A review of our authorities prior to Burke v. Hollinger, supra, page 510, handed down February 4, 1929, will show that in considering the question of nuisance as related to a building used for garage purposes, the most important consideration was *the location where the use or proposed use was to be carried on*. The use of a building for the storage, service or repair of a number of automobiles is not a nuisance per se in a section devoted to business purposes (Phillips v. Donaldson, 269 Pa. 244) as this statement is further explained in the Hollinger Case, but such use for any of these purposes does become a nuisance per se in a residential section. In considering the place where the use was to be made, the primary question was and still is whether the section is exclu-

sively residential; as to such the use was and still is a nuisance per se.

Where the locality was shown to be residential, the effect of the proposed use within that locality was established from the reappearance in evidence of a chain of circumstances of use, aided by common experience and general knowledge. The courts could thereafter take judicial notice that in certain localities certain pursuits or businesses were universally *injurious to health* and *damaging to property,* no matter how carefully conducted. Such pursuits or businesses were in given places styled nuisances per se: Penna. Co. v. Sun Co., 290 Pa. 404, 410. Garages in residential districts fell under this ban.

It was found as a fact in Prendergast v. Walls, 257 Pa. 547, that the usual accompaniment of a building used for storing and servicing a number of cars was noise, odor, danger, pounding metal, testing engines, speeding motors, smoke, danger to pedestrians, sounding of horns and danger to school children. These same disturbing and destructive features have been continually and consistently found to exist in all our later cases, and our rule was as consistently applied, except in Burke v. Hollinger, 296 Pa. 510, and Burke v. Bassett, 296 Pa. 524, where a distinction was made as to regions bordering on a commercial district in conjunction with the elimination of many of these distracting and destructive features by present day operation. These accompaniments in the earlier cases followed the use of a building as indicated, regardless of the number of cars.

We did not attempt in any of them to classify the *persons* who made use of the building, and the term "public garage" was not intended to signify such a classification, but to denote a general use creating a condition that amounted to a nuisance interdicted in a residential section. Thus in the Prendergast Case the public without limit, save as to the building's capacity, was invited

to store its cars (it was in this case that the term "public garage" first appeared), while in Hohl v. Modell, 264 Pa. 516, 24 cars were to be stored. In Slingluff v. Tyson, 280 Pa. 206, a very close case, there was no storage of cars but merely an attempt to provide service and minor repair work for a class of individuals who owned *Paige cars* and who lived within a convenient radius. The disturbing features above noted pursued the use in such a place and the injunction was sustained because the place was a residential district. The same situation existed as to a similar service for owners of Hudson-Essex cars in Mitchell v. Guaranty Corp., 283 Pa. 361, and as to a gasoline service station in Carney v. Penn Oil Co., 291 Pa. 371. Where a community garage for 20 cars was to be erected, each stall to be leased to individuals, without service, sale of supplies or attendants, the use was prohibited in a residential district because of the accompanying disturbing features and resulting property damage: George v. Goodovich, 288 Pa. 48.

In some of the uses (for instance, the Slingluff and Mitchell cases), the purposes were very similar to that now urged in the instant case. In those cases the sales of the particular cars were to be advanced, while here the renting of the apartments was to be aided by the proposed garage service. In some instances the building was not erected, but the contemplated use was either admitted, or proof of the effect of the use was offered. So that, to summarize, in considering the general proposition of nuisance, these factors bore on our conclusion: the proposed use, the location of the building in a particular section, the accompanying disturbances when operated, the damages resulting to adjoining property and the injury to the health of the people living within the radius of active operations.

When this appeal first came before us, having an array of authorities, with their clear intent, and having the determination that the place was a residential neighborhood, we affirmed the decree of the court below which

embodied the effect of all our prior cases enjoining the storage of cars. Unless the policy of this court was to be changed, we could do nothing less than was then and there done. That action became the law of this case and as such it must be judged.

When the matter came before the Superior Court, that tribunal, instead of following our cases, evolved a policy that did not comport with our prior decisions. This court was familiar with the subject-matter of the case, and, under these circumstances, when the present decree was before the Superior Court for consideration, it would have been better had that body immediately certified the case to this court for our determination instead of making an effort to define a policy which appears to be in opposition to that advanced by this court. Counsel there as here sought to impale the decision on the name "public garage" and what it means. We did not enjoin a name; what *was* enjoined was the use of a building under given conditions in a residential neighborhood. The effect of the Superior Court's rule would be to wipe out all protection in exclusively residential districts, defined in the Hollinger Case as classes A and B. That court, in defining a private garage such as could be built in any residential district, gives this illustration: "If the owner of one hundred separate houses built on contiguous lots without separate garages leased a building for the storage of the cars of his tenants and no others, would the building for that purpose constitute it a public garage? Still our answer is 'no.'" But what difference is there between this use and that made by one person if he owns 100 cars and has them operated by 100 drivers and stored in a building in a residential section, or if 20 different owners lease separate garages from one person, as in George v. Goodovich, where it was held the use would not be permitted, or if 100 Paige owners are furnished garage service, as in the Slingluff Case, or if 100 separate owners club together to build a garage? The effect of each combination, no

matter how brought about, is the collection of a number of cars which use a building for storage, service and the like in a residential district. These would under our cases be harmful to property rights and injurious to health. The *definition* of a public garage was not the theory on which the injunctions in the various cases rested, nor is it the proper theory on which to interpret the decree and determine the matter now before us. Our decisions were based on the effect the use had on adjoining owners in damage to property and injury to health. This followed the law of nuisance and was the declared policy of this court. To have held otherwise would be to open the door to subterfuges that recreate the prohibited conditions.

Appellees, disregarding the injunction decree, used the property for 20 tenants of Garden Court. They say that this apartment is owned by them and they should be permitted to use the present garage in conjunction therewith. We have indicated that under the decree of the court below this use could not be done. We did not decide as to the apartment units nor was any opinion expressed thereon, but we are all of one mind that the building for such use protected by adjoining apartments was clearly proper and could be used by its tenants. The use by others in a residential district was in violation of the decree: George v. Goodovich, supra; Hohl v. Modell, supra.

The facts that disturbances may be controlled and congestion on the highways minimized, and that the garage is an important inducement in running Garden Court Apartment, if the cars are stored without charge, are of no moment. These considerations cannot influence the primary principle that the use by a number of persons of a building for storage and service of cars was a violation of the terms of the decree. It violated the law of the case as it then stood and the order of contempt was proper.

We now find it necessary to enlarge our policy relating to the use of buildings in third-class districts. The reasons for this have been pointed out in Burke v. Hollinger. One of the chief auguries of the continued success of business, industrial and educational enterprises of cities, is a convenient and adequate system of quick communication or transportation to and from these centers. It is not a matter of purely individual concern but of public interest. A policy which continues to shut out all accommodation for automobiles in residential sections such as this one must necessarily inconvenience the traffic. It must seriously challenge judicial attention, as such districts are thickly inhabited centers.

Having what was said in the Hollinger and its companion case before us, and bearing in mind that the chief object of the law of nuisance is to prevent the legal destruction of a property right and injury to health, we start with these facts. The uses permitted in third-class residential districts, as defined in the Hollinger Case, have an undoubted effect on the values of private residence properties therein. There may be found in these districts apartment houses of all kinds, hotels, lodging houses, club houses, public schools, telephone exchanges, truck gardens and greenhouses.

The land involved in the instant case and that adjoining lies in a third-class residential district as defined in that case. An apartment house possesses many inconveniences and annoyances that affect the value of surrounding property. They have been held in some instances to be detrimental to the health of the community by shutting out light and air. See Satterthwait v. Gibbs, 288 Pa. 428. The Supreme Court of the United States in Village of Euclid v. Ambler, 272 U. S. 366, 394, thus spoke of apartment houses: "The development of detached house sections is greatly retarded by the coming of apartment houses, which has sometimes resulted in destroying the entire section for private house purposes;......in such sections very often the apart-

ment is a mere parasite, constructed in order to take advantage of the open spaces and attractive surroundings created by the residential character of the district. Moreover, the coming of one apartment house is followed by others, interfering by their height and bulk with the free circulation of air and monopolizing the rays of sun which otherwise would fall upon the smaller homes, and bringing, as their necessary accompaniments, the disturbing noises incident to increased traffic and business, and the occupation, by means of moving and parked automobiles, of larger portions of the streets, thus detracting from their safety and depriving children of the privilege of quiet and open spaces for play, enjoyed by those in more favored localities,—until, finally, the residential character of the neighborhood and its desirability as a place of detached residences are utterly destroyed. Under these circumstances, apartment houses, which in a different environment would be not only entirely unobjectionable but highly desirable, come very near to being nuisances."

It has been stated that since the decree in this case was first entered many more apartment houses have been and are being constructed; the district is not only lending itself to apartment houses, but it may be regarded as predominately of such nature. The first unit around the present garage is almost finished. While we may not agree entirely with what the Supreme Court of the United States has said as to the effect of such houses in districts like the present, and it is unnecessary in the present case, there is a decided detrimental effect on adjoining property value. The most baneful influence to the plaintiff is this construction, and this has been done without objection. Under these circumstances, the only properties that would be affected by the proposed use of the present garage would be possibly a half dozen located on the corner of 46th Street south of Pine. It adds but little to the sum total of the present de-

tracting influences of the apartment houses on neighborhood values.

Our conclusion from these considerations is that in third class residential districts a garage properly built to, under or around an apartment house is not a nuisance per se. Its use, however, from the fact of operation may become a nuisance. In such districts the method of construction and operation should conform to that laid down in the Hollinger Case; and where two apartments in the same vicinity are joined in the same ownership, a garage under one building or built as in the instant case may serve both. As operation becomes the decisive factor, we suggest that the manner in which the place is conducted, particularly as it refers to the properties on Pine and 46th Streets, should receive careful attention. Congestion on the street in and about these houses or any of the plaintiffs' houses, due to improper management and use of the garage building or any unusual disturbance on the street from the same operation, should be carefully guarded against by the court below in future orders. Whether other owners in this immediate vicinity may use the garage in question will be left to the sound discretion of the court below.

As to residential owners who live outside apartment house influence in these districts, where a building is attempted to be used for garage purposes the rule heretofore existing as to such use still prevails. As an act to permit zoning has now become a law for Philadelphia, all this will be properly taken care of by municipal ordinance.

The decree of the Superior Court is reversed and that of the court below imposing the fine and the order of contempt is affirmed. When appellees have purged themselves of the contempt order, leave is then granted to appear before the court below and by petition ask for a modification of the decree in the light of the concluding part of this opinion. Costs to be paid by appellees.

592

DISSENTING OPINION BY MR. JUSTICE SCHAFFER:

I would confine the use of the garage to the occupiers of the apartment house as a part of which it is constructed and not permit the use of it by any others. For this reason, I dissent from some of the views of the majority.