Ladner et al., Appellants, *v.* Siegel (No. 4).

488

490

Argued November 25, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Owen J. Roberts,* with him *Grover C. Ladner,* for appellants.—A court of equity has no power to modify a final decree after the term at which the same was entered except by bill of review setting forth sufficient grounds:

Wetmore v. Karrick, 205 U. S. 141; Sibbald v. U. S., 12 Peters 488; Simmons v. Grier, 258 U. S. 82.

The final decree in this case has become the settled law between the parties and as such is protected by both the 14th Amendment to the federal Constitution and by section 11, article I, of the Pennsylvania Constitution: Scott v. McNeal, 154 U. S. 34; Chicago, B. & Q. R. R. v. Chicago, 166 U. S. 226; Penna. v. Bridge Co., 18 How. 421; McCullough v. Virginia, 172 U. S. 102; Muhlker v. R. R., 197 U. S. 544; Sibbald v. U. S., 12 Peters 488; Wetmore v. Karrick, 205 U. S. 141; Menges v. Dentler, 33 Pa. 495; Bolton v. Hey, 168 Pa. 418; Devine's Est., 199 Pa. 250; Lafferty's Est., 230 Pa. 496; Marsh v. Pier, 4 Rawle 273; Hochman v. Finance Corp., 289 Pa. 260.

*W. B. Saul,* of *Saul, Ewing, Remick & Saul,* for appellees.—An injunction is a matter of grace, so that the action of this court in modifying the measure of relief originally granted has left the foundations of the Constitution intact: Heilman v. R. R., 175 Pa. 188.

Under the prior decision of this court, there can be no question concerning the soundness of the action and practice of the court below in modifying the injunction: Burke v. Hollinger, 296 Pa. 510.

Any rights which plaintiffs had were fully protected by the modified decree and the court below left open a continuing opportunity for plaintiffs to prove any facts which they desired to prove: Com. ex rel. v. Lewis, 253 Pa. 175.

OPINION BY MR. JUSTICE KEPHART, January 6, 1930:

This is the fourth appeal to this court in the present case and it is high time the controversy is put to rest. If appellants have been deprived of any right, or have been otherwise subjected to judicial misadventure, it is our duty to correct the error. Before that can be done, however, some right must appear to have been breached.

Appellees, for brevity called Siegel, owned a block of ground between 47th, 48th, Pine and Spruce Streets. He proposed to build in its center a one-story garage, 160 by 200 feet, with basement, to accommodate in its entirety about 400 cars. The entrance was to extend 80 feet from the Pine Street line to the main building. The structure was to be surrounded and enclosed by units of apartment houses, the first starting from its opening on Pine Street and extending thence along the street lines around the block. When completed, nothing but the entrance to the garage would be visible from the street.

Early in 1927, proceedings were instituted by adjoining landowners, hereinafter called Ladner, to prevent the use of the building for garage purposes. The court below found the entire district to be "exclusively residential," containing no commercial buildings or shops with the exception of a drug store in an apartment house, and that the proposed use to be made of Siegel's building then under construction was to supply gasoline and to store cars; also that the exterior appearance of the structure was not objectionable and that the ventilating system designed to remove gases and odors and the other effects from the use proposed would not give the desired protection to the neighborhood. The injunction was granted and affirmed by this court in 293 Pa. 306. Later Siegel used the building for housing the cars of the occupiers of a near-by apartment owned by him; this action brought on an application for an attachment for violating the final decree and the owners were adjudged in contempt. On appeal, the order was sustained (see 296 Pa. 597). Leave was granted defendant to ask the court below to modify the injunction. On return of the record, Siegel applied for a modification, and an order to that effect was made; its exact language will appear in the statement of facts in this case. It is from that order the present appeal is taken. We have omitted a discussion of the intermediate action taken in connec-

tion with the record of the case (294 Pa. 368), of no moment in the present proceeding.

It is contended, first, that a court of equity has no power to modify a final decree after the term at which it was entered, except by a bill of review based on sufficient grounds. Without discussing the matter at length, we may say, in the first place, that in this State there are no term times in equity. Hence the common law rules as to term time do not apply. Our equity rules providing for a decree nisi, exceptions and final decree contemplate finality apart from term rules in all cases where the nature of the decree calls for finality. An appeal to a higher court may of itself suspend the force of such a decree, but when action is taken by that tribunal affirming the decree, the suspension is lifted and the decree is in full force; if the time for appeal is allowed to run, at the expiration thereof the decree becomes unchangeable as though it had been affirmed on appeal. Rule 78 permits a rehearing, but it must be requested before the time for an appeal expires. Under these proceedings our decrees possess all the attributes of finality, as do those spoken of in Wetmore v. Karrick, 205 U. S. 141, 157, and Simmons v. Grier, 258 U. S. 82. Such are the general rules governing final decrees in equity.

There are many equitable proceedings that illustrate the general rule, such as specific performance, bills to reform instruments and others. A final decree in such equitable proceeding is unchangeable except possibly through gross mistake to be corrected by a bill of review, and not then if any intervening right has appeared since entering the decree. In all such proceedings the decree calls for definite action and the law presumes such action to follow the order.

But though a decree may be final, as it relates to an appeal and all matters included or embodied in such a step, yet, where the proceedings are of a continuing nature, it is not final. These are exceptions to the general rule, and to determine them the nature and character of

the equitable action must be considered; that is, whether the decree is final for the purpose of execution, or contemplates other and further steps in the administration of justice.

An injunction is the form of equitable proceeding which protects civil rights from irreparable injury, either by commanding acts to be done, or preventing their commission, there being no adequate remedy at law. Granting an injunction rests in the sound discretion of the court, that discretion to be exercised under well-established principles, and there are no statutory limitations on the power of the court in relation thereto. While the decree in such action is an adjudication of the facts and the law applicable thereto, it is none the less executory and continuing as to the purpose or object to be attained; in this it differs from other equitable actions. It operates until vacated, modified or dissolved. An injunction contemplates either a series of continuous acts or a refraining from action. A preventive injunction constantly prevents one party from doing that which would cause irreparable damage to his neighbor's property rights. The final decree continues the life of such proceeding, not only for the purpose of execution, but for such other relief as a chancellor may in good conscience grant under the law. This is the practical effect of County of Butler v. Pittsburgh, etc. Ry. Co., 298 Pa. 347: "Where there is a final decree contemplating the performance of a series of acts,......the decree......continues the life of the equity proceedings; ......the decree cannot be executed by a bill to revive, nor can it be enforced by mandamus."

The injunction in this case prevented an anticipated injury to a property right. The chancellor in granting it placed the protecting arm of the court about this right and prevented Siegel from using his property in such a way as would injure his neighbors. It was to remain so long as the court felt that protection necessary to complainant's rights, or until conditions demanded a

modification of that protection or its entire removal. The power of the chancellor to modify in such cases cannot be controlled by term rules, otherwise equity would cease to be equity and become a hard and fast taskmaster.

As stated in Lowe v. Prospect Hill Cemetery Assn., 75 Neb. 85, 106 N. W. 429, on a petition to modify a perpetual injunction granted to restrain the use of ground for burial purposes, where the contention was that the court was without power to modify its decree at any succeeding term, "We perceive no good reason why this right should not be exercised where......a perpetual injunction, because of the occurrence of facts and conditions since its rendition, has become of no use or benefit to the one whose rights were thus protected, or where it would be inequitable and against good conscience to longer enforce it...... The injunction in this case is purely preventive. It restrains the defendant from doing the prohibited acts, and nothing more. It prevents a threatened injury to, and encroachment on, the rights of the plaintiff. It is not of the nature of a decree or judgment, which, when executed, has served its purpose. Its force and effect continues so long as it shall remain without modification...... We are satisfied that [in] a final decree......allowing a permanent injunction, the court granting it possesses the undoubted power to either vacate or modify, when the circumstances and situation of the parties have so changed as to render such action just and equitable."

"The court which rendered a decree for an injunction may, without even any statutory authority to do so, open, vacate or modify the same where the circumstances and situation of the parties are shown to have so changed as to make it just and equitable to do so" (32 C. J. 389), or where the law has changed: 32 C. J. 407; Wetmore v. Law (N. Y.), 34 Barb. 515; Weaver v. Mississippi Boom Co., 30 Minn. 477, 16 N. W. 269; Larson v. Minn. Northwestern Elec. Ry. Co., 136 Minn. 423, 162 N. W. 523;

Emergency Hospital v. Stevens, 146 Md. 159, 126 Atl. 101.

The modification of a decree in a preventive injunction is inherent in the court which granted it, and may be made, (a) if, in its discretion judicially exercised, it believes the ends of justice would be served by a modification, and (b) where the law, common or statutory, has changed, been modified or extended, and (c) where there is a change in the controlling facts on which the injunction rested.

In considering the causes which call for a modification of an injunction, we may pass the first, wherein the action of the court below may properly be considered as an interpretation of its own decree,—to the second and third; they are of controlling importance. We have discussed in Nesbit v. Riesenman, the preceding case (which should be read in connection with this opinion), the basis on which decrees of this nature are entered. It was there stated that the operation of a so-called public garage in an exclusively residential district is a nuisance per se; this was held without regard to the location of the residential district or the class or uses of the buildings making up the residences. The rule was announced in accord with the common law principle and in protection of the common law right that an owner has the right to the use of his property without injurious interference from other owners. Later, it was found, through the increased use made of automobiles as a means of transportation, that the employment of property for public garage purposes in or close to business localities had become and was generally considered a necessity and not an outright nuisance; though it might be so conducted or operated as to become one. In applying the common law, we explained the term "residential district,"—and stated that the "nuisance per se" rule was not intended to cover apartments, business houses and dwellings close to commercial centers in cities of larger size; such a location was not "exclusively

residential." See Burke v. Hollinger, 296 Pa. 510. Still later, following the principle of the common law which through its flexibility adapts itself to changed conditions, we found that the use of buildings for public garage purposes, as described in the present case, in a residential district composed of apartment houses, hotels, schools and clubs, was not to be regarded as a nuisance per se, but might become a nuisance in fact from operation, the latter being left to the sound discretion of the chancellor. We further explained that the "residential district" described in this case, was not an exclusively residential district within the meaning of that term, where the nuisance per se rule would apply to a building built and used as this one was. This fact was not considered on the first appeal. It becomes apparent that the second and third reasons amply justify the modification of the decree, if there is nothing else to prevent it.

It is urged, however, that the final decree became the settled law between the parties, and, as such, was protected by both the 14th Amendment of the federal Constitution and by section 11 of article I of our Constitution. We have no doubt that, when the federal Constitution said, "Nor shall any *state* deprive any person of life, liberty or property without due process of law," it included all functionaries of state government, judicial as well as political (Scott v. McNeal, 154 U. S. 34, 35; Chicago, B. & Q. R. R. v. Chicago, 166 U. S. 266), and the courts may not, through judicial decrees or judgments, violate the due process or equal protection clauses. The state cannot, through legislation, take away a vested right secured by a final judgment (Penna. v. Wheeling Bridge Co., 18 Howard 421; McCullough v. Virginia, 172 U. S. 102); neither may a court take away a vested right secured by a valid decree or judgment. The "term rule," our rules of court, become peculiarly applicable in the enforcement of the principle (Wetmore v. Karrick, 205 U. S. 141) as to all actions

or proceedings that properly come within it. In Nesbit v. Riesenman, supra, we said: "The same reasons that would strike down an act of assembly regulating nuisances as an infringement of rights guaranteed by the 14th Amendment, would, no doubt, condemn a decision of a court that would hold a particular act a nuisance, or its repetition a nuisance per se; that is, that the action is arbitrary, unreasonable or an unjust discrimination." But, says the federal Supreme Court, "We cannot interfere unless the judgment amounts to a mere arbitrary or capricious exercise of power, or is in clear conflict with those fundamental 'principles which have been established in our system of jurisprudence for the protection and enforcement of private rights' ": American Express Co. v. Kentucky, 273 U. S. 269; Corrigan v. Buckley, 271 U. S. 323; West v. Louisiana, 194 U. S. 258.

The question may be stated: Does the particular judgment of a state court of last resort, on a question arising under the common law, violate the 14th Amendment of the federal Constitution? The question is not presented through a statute, nor the proceedings of quasi-judicial state agencies. See West v. Louisiana, supra; American Express Co. v. Kentucky, supra; Delmar Jockey Club v. Missouri, 210 U. S. 324; Corrigan v. Buckley, supra, and Wetmore v. Karrick, supra. An erroneous decision of law or fact does not deprive the unsuccessful party of property without due process of law: Arrowsmith v. Harmoning, 118 U. S. 194; Howard v. Kentucky, 200 U. S. 164; Bonner v. Gorman, 213 U. S. 86.

We need not discuss this interesting question further, for notwithstanding the apparent hesitancy to disturb judicial decrees based on the common law as infractions of the 14th Amendment, before the amendment can intervene there must be a right in existence that has become vested. An injunction decree does not create a right; it protects the right of the owner to the enjoy-

ment of his property from injurious interference by the uses of other land. The right protected is an attribute of property existing through the application of common law principles. A decree preventing its injury does not give to the complaining party a perpetual or vested right either in the remedy, the law governing the order or the effect of it. He is not entitled to the same measure of protection at all times and under all circumstances. A decree protecting a property right is given subject to the rules governing modification, suspension or dissolution of an injunction. The decree is an ambulatory one and marches along with time affected by the nature of the proceeding. Two cases illustrate this. In Penna. v. Wheeling & Belmont Bridge Co., 18 Howard 421, a bridge across a navigable river was ordered abated and its construction enjoined as being in conflict with the then existing regulations of commerce enacted by congress. Later that body passed an act declaring the bridge a lawful structure. In modifying the injunction, the Supreme Court said: "If the remedy in this case had been an action at law, and a judgment rendered in favor of the plaintiff for damages, the right to these would have passed beyond the reach of the power of congress. It would have depended, not upon the public right of the free navigation of the river, but upon the judgment of the court. The decree before us, so far as it respects the costs adjudged, stands upon the same principles, and is unaffected by the subsequent law. But that part of the decree, directing the abatement of the obstruction, is executory, a continuing decree, which requires not only the removal of the bridge, but enjoins the defendants against any reconstruction or continuance. Now, whether it is a future existing or continuing obstruction depends upon the question whether or not it interferes with the right of navigation. *If, in the meantime, since the decree, this right has been modified by the competent authority,* so that the bridge is no longer an unlawful obstruction, it is quite plain the de-

cree of the court cannot be enforced. There is no longer any interference with the enjoyment of the public right inconsistent with law, no more than there would be where the plaintiff himself had consented to it, after the rendition of the decree. Suppose the decree had been executed, and after that the passage of the law in question, can it be doubted but that the defendant would have had a right to reconstruct it? And is it not equally clear that the right to maintain it, if not abated, existed from the moment of the enactment?" In accord with this is Clinton Bridge, 10 Wallace 454. There is no vested right in an existing law: Mondou v. New York, etc., R. R., 223 U. S. 1; 12 C. J. 958.

In Hodges v. Snyder, 45 S. D. 149, 186 N. W. 867, the officials were enjoined from acting as a school district organization. Later the defect in the organization was cured, and in dissolving the injunction the court said: "In the case at bar, plaintiffs had a right to injunctive relief at the time the action was brought, because of the then law; this right, as to the future, rested solely upon the continuance of such law; this was not a vested right, and no decree of the court could make it such; it was subject to be terminated whenever the law changed. The change in the law, therefore, did not deprive any one of a vested right to an injunction, because no one was possessed of such right. The only vested right created by the judgment before us is the right to recover the costs adjudged in favor of the successful party. That a person cannot have a vested right in an injunctional order or decree is made perfectly clear by the opinions in the cases cited above." What is here said as to the federal Constitution applies to our own. Neither have been breached by the decrees in this case. To reduce the case to a reductio ad absurdum: suppose the neighborhood in which the garage is situated became predominantly a business one, no one living in it but Ladner, could he insist on the continuance of the injunction? His pres-

ent contention, if approved, would necessarily result in saying that he could; but it is clear that he could not.

Finally, appellants contend "that they have been denied an opportunity to demonstrate that there has been no change of circumstances which would legally warrant the alteration of the decree," and we were much impressed with this position at the argument. Bearing in mind, however, what we have just discussed with relation to the modification of the final decree, an examination of the record in the light of the principles above set forth is convincing that appellant is in no position to press this objection, even if it was serious, as it was not, as shall be shown. Standing on the record before us, any one of five reasons would be sufficient to prevent our consideration of it. First, the question is not covered by the statement of the questions involved; second, there is not a single assignment of error which raises this contention; third, there is no offer to prove the subject-matter, nor of course is there an exception to such refusal; fourth, ample authority lies in our equity rules for appellant to have taken depositions and placed them on record verifying the facts it is now asserted he was denied the right to show; and, fifth, all appellant desired to prove, as set forth in his paper-book, is of no consequence in the present issue. It is as follows (we quote from the paper-book): "Plaintiff believes with confidence that they can establish by credible evidence that the traffic situation on Pine Street has greatly changed for the better since the repaving of Spruce Street; that, further, the inevitable injury to their property will continue as long as the entrance of this garage is maintained on Pine Street, conceded to be the most residential of all four streets surrounding the garage." In addition to the fact that the latter part of this offer was always before the court, what he wishes to prove is what would happen as a result of the operation of this garage.

In the opinion of April 24, 1929 (296 Pa. 579), we said, as to the use of this building for garage purposes: "Its use, however, from the fact of operation may become a nuisance...... As operation becomes the decisive factor, we suggest that the manner in which the place is conducted, particularly as it refers to the properties on Pine and 47th Streets, should receive careful attention. Congestion on the street in and about these houses or any of the plaintiffs' houses, due to improper management and use of the garage building, or any unusual disturbance on the street from the same operation, should be carefully guarded against by the court below in future orders." It will be seen that the very matter complained of rests entirely in the discretion of the court below and may be raised at any time; it would serve no useful purpose to reverse an order which refused the right to take testimony when that right is and always will be present at any time plaintiff feels he is aggrieved within the meaning of our later decisions.

Having carefully considered all matters before us, the order of the court below modifying the injunction is affirmed. Costs to be paid by appellants.