**CITY AND COUNTY OF DENVER v. DENVER TRAMWAY CORP.**

No. 4080.

United States Court of Appeals
Tenth Circuit.

Feb. 15, 1951.

Abe L. Hoffman, Denver, Colo. (J. Glenn Donaldson, Denver, Colo., on the brief), for appellant.

Montgomery Dorsey, Denver, Colo. (Thomas Keely and Hughes & Dorsey, all of Denver, Colo., on the brief), for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

This case is here on appeal from an order enlarging in certain particulars the injunctive relief previously granted in the proceedings and denying a motion to dissolve and dismiss such previously granted injunction. A chronological statement in the nature of background is essential to a clear understanding of the questions presently presented for determination.

In 1920, Westinghouse Electric & Manufacturing Company filed a creditor's bill against Denver Tramway Company, a corporation owning and operating a street railway system in the City of Denver, with lines extending to certain adjacent communities and to the Cities of Golden and Leyden. The court appointed a receiver with power to continue operating the system. The receiver filed in the suit a petition concerning operating conditions and fares. He pleaded among other things that certain ordinances with respect to maximum fares which the company should be permitted to charge were regulatory rather than contractual, and that such maximum fares were confiscatory. The City and County of Denver intervened and interposed an answer to the petition. It denied that the maximum rates permitted were confiscatory; pleaded that under ordinances enacted in 1885 and 1888, a maximum rate of five cents was contractually fixed; pleaded that under a franchise granted in 1906, the company was restricted to fares of not more than five cents for adults and half that amount for children;

and that the rates subsequently authorized and fixed at six cents for adults and three cents for children were temporary and did not change the contractual obligations of the company under the prior ordinances and a franchise. On March 12, 1921, the court entered an interlocutory decree restraining the city and county from enforcing maximum fares of six cents for adults and three cents for children, or any lesser fares, and authorizing the receiver to charge and collect fares not in excess of eight cents for adults, with two tickets or tokens for not more than fifteen cents, and not in excess of four cents for children between the ages of six and twelve years, with four tickets or tokens for not more than fifteen cents. The city and county appealed and the interlocutory decree was affirmed. City and County of Denver v. Stenger, 8 Cir., 277 F. 865.

On December 30, 1924, the court entered its final decree in which it was determined and adjudicated that the provisions of the ordinance of 1885 and 1888 purporting to limit fares to five cents for single passage were not contractual in effect but were regulations in the exercise of the police power of the city and county; that the provisions in the several ordinances and franchise fixing or attempting to fix fares at a maximum of six cents or less for adults, and three cents or less for children under twelve years of age, were confiscatory and void; and that the provisions in such ordinances and franchise, and any other provisions of law or ordinances were likewise confiscatory and void insofar as they required the receiver, the company, or the successors and assigns of them, or either of them, to put into effect and maintain fares or charges for transportation less than those which would afford just compensation, such compensation being fixed at not less than 7½ per cent net annual return upon a valuation of $23,514,769 for the used and useful property of the city lines of the company. By the decree, the city and county was enjoined from enforcing or attempting to enforce against the receiver, the company, and the successors or assigns of them, or either of them, any of the provisions of such ordinances or franchise fixing a maximum fare of six cents or less for adult passengers, and three cents or less for children under twelve years of age; was enjoined from interfering with the receiver, the company, or the successors and assigns of them, or either of them, in the collection of such fares as they might fix, provided the net annual return therefrom should not exceed 7½ per cent on a valuation of $23,514,769, after certain deductions; and was enjoined from bringing or causing to be brought any litigation to enforce the provisions of such ordinances or franchise limiting the maximum fares to six cents or less for adult passengers, and three cents or less for children under twelve years of age, or to compel the receiver, the company, or their respective successors and assigns, to comply with the provisions of such ordinances and franchise in relation to maximum rates, or to interfere or attempt to interfere with the collection of such fares and charges by the receiver, the company, or their respective successors and assigns as were permitted under the terms of the decree as non-confiscatory, or to enforce any claim or contention contrary to the provisions of the decree respecting the rights of the company, its successors or assigns, under the ordinances of 1885 and 1888. The decree contained a further provision that it should not in any manner or degree be a limitation upon the legislative power of the city and county properly and legally to regulate fares, provided only that such regulations not be confiscatory in character and violative of due process. And it contained still a further provision that any party thereto or his successor or assign should have the right at any time to make application to vacate, modify, or extend the injunction because of change in circumstances thereafter occurring, or for any additional relief to which he or it might deem himself or itself entitled by reason of any acts or events occurring after the date of such decree. This case and two others were consolidated for certain purposes. Each of the other cases was for the foreclosure of a mortgage. A special master sold the property. Two individuals were the nominal purchasers, but The Den-

ver Tramway Corporation was the ultimate purchaser and its acquisition of the property was expressly approved in the order confirming the sale. The city and county appealed from the final decree. While the cause was pending in the Court of Appeals, by stipulation of the parties and order of the court, The Denver Tramway Corporation, successor in interest to the receiver and The Denver Tramway Company, was substituted as appellee. With a modification not having any material bearing here, the decree was affirmed, City and County of Denver v. Denver Tramway Corp., 8 Cir., 23 F.2d 287; and certiorari was denied, 278 U.S. 616, 49 S.Ct. 20, 73 L.Ed. 539.

In 1948 the council of the city and county enacted an ordinance which among other things fixed maximum rates of ten cents for adults and children over twelve years of age other than school children, five cents for school children under nineteen years of age when going to or coming from school and holding school cards, and five cents for children six years of age and over and under twelve years of age. Norman E. Berman instituted in the state court an action against the city and county and the company attacking the validity of such ordinance. Both defendants responded. The district court dismissed the complaint. On appeal, the Supreme Court of Colorado held that in the City and County of Denver the granting of franchises, the regulation of utility rates, and the extension and enlargement of franchise privileges can be exercised only through the initiative upon a vote of the qualified taxpaying electors in the manner provided in the charter of such city and county, and that the ordinance in question was void. Berman v. City and County of Denver, 120 Colo. 218, 209 P.2d 754. After remand of the cause, Berman filed in the proceeding a pleading denominated petition in which it was alleged among other things that the ordinances of 1885 and 1888 were contractual; that the terms of such ordinances and the acceptance and action upon the terms thereof constituted an inviolable contract between the city and county and company; that such ordinances fixed a maximum rate of five

cents for single passage; and that the company had violated and was continuing to violate such contract by charging and collecting rates in excess of that sum. An accounting and restitution of the excess sums charged and collected was sought.

Shortly after the filing of the petition in the state court, the company filed in this proceeding in the United States Court a pleading denominated motion to modify and extend the injunctive relief previously granted and supplemental complaint. The pleading alleged the previously granted injunctive relief in this cause, the institution and prosecution of the case in the state court, and the filing and pendency of the petition in such cause. And it further alleged that the acts on the part of Berman in instituting and prosecuting such cause and in seeking the accounting and restitution amounted to a violation of the final decree in this cause, and created and caused doubt and confusion on the part of the public with respect to the rates which the company was allowed to charge and collect with resulting injury to the company. A temporary restraining order was issued, and Berman was made a party to the action. The city and county filed objections to the motion to enlarge the injunctive relief previously granted, and it also filed a motion to dissolve and dismiss such previously granted injunction. After hearing, the court entered an order which provided among other things that until the further order of the court, Berman and other members of the public be restrained and enjoined from enforcing or attempting to enforce against the company any of the fare regulations contained in the ordinances of 1885 and 1888; from re-litigating or attempting to re-litigate the legal effect of the ordinances of 1885 and 1888 in respect to maximum rates; from interfering with the company in the collection, retention, and use of fares previously fixed and established; and from seeking or attempting to seek in the suit in the state court to compel the company to collect, retain, or use any fares less than the then present fares of ten cents for adults and school children more than twelve years of age, five cents for school children under nineteen years of

age when going to and from school and holding school cards, and five cents for children six years of age and over, and under twelve years of age. It further provided that nothing contained therein should constitute a limitation or restriction upon the legislative power of the city and county, by or through the proper authorities in whom the power to do so may be vested, properly and legally to regulate from time to time the fares to be charged by the company, provided such regulation or attempted regulation be in accordance with law and not be confiscatory in character or violative of due process and equal protection. And by further provision in the order the court denied the motion of the city and county to dissolve and dismiss the final decree. The city and county appealed.

■ The pleading of the company denominated motion to modify and extend the injunctive relief previously granted and supplemental complaint did not have for its purpose any additional restraint of the city and county. It did not have for its objective any further proscription upon the city and county. The company did not complain that the city and county was presently taking or threatening to take any action or seeking or threatening to seek any relief in the state court or elsewhere inconsistent with or violative of the terms and provisions of the injunction previously granted in this cause. The sole purpose of the pleading was to restrain Berman and other fare-paying members of the public in whose behalf he pretended to act from taking any action or seeking any relief in the case pending in the state court which constituted an effort to re-litigate matters adjudicated and determined in the injunctive relief previously granted in this proceeding. And the order of the court did not enlarge the injunction as against the city and county. It did not impose upon the city and county any further or additional proscription concerning fares. It did not place upon the hands of the city and county any new or additional tie in respect to fares. And it did not place upon the city and county any restraint whatever in respect to its acts, conduct, or contentions in the case pending in the state court. Its restraining provisions in respect to fares and the re-litigation of matters previously adjudicated in this cause were directed solely and exclusively to Berman and other fare-paying members of the public in whose behalf he pretended to act, not the city and county. But Berman did not appeal. That part of the order restraining and enjoining him and others in whose behalf he pretended to act from seeking or attempting to seek certain relief either in the case pending in the state court or elsewhere, from bringing or causing to be brought litigation or proceedings of certain kinds and for certain purposes, and from interfering or attempting to interfere in certain respects with the rights of the company to fix, charge, collect, retain, and use the proceeds from certain fares was subject to review on appeal by Berman, but it is not open to challenge on this appeal of the city and county. That is too clear to call for extended discussion or the citation of cases in its support.

■ The city and county contends that the supplemental complaint failed to bear any relation to the proceedings which culminated in the final decree. But the city and county was bound by the final decree, and as already said the order appealed from did not modify or enlarge in any respect the scope and effect of the final decree as against the city and county. The order will be searched in vain for any provision placing the city and county under further or additional restraint. And inasmuch as the order did not impose upon the city and county any further proscription in the exercise of its governmental functions, it cannot be heard to say that the order should be reversed for the reason that the pleading had no relation to the proceedings which culminated in the final decree. Assuming, without deciding, that the pleading had no such relation, the city and county was not prejudiced on that account.

■ One ground of the motion of the city and county to dissolve and dismiss the injunction granted in the final decree was that all purposes in relation to rates to be served by the decree had been fully accomplished and completed, and that the court no longer had jurisdiction in the

premises. It is argued that at the time the final decree was entered, the property constituting the transportation system was in the possession of the court; that the purpose of the restraining provisions of the decree was to protect and conserve the property and to prevent the city and county from imposing upon the receiver a duty which would be financially disastrous to his operation of the property during receivership; that the receivership was terminated and the property delivered to the company; and that after the property was released from the custody of the court, the court had and has no further jurisdiction for supplemental or ancillary proceeding. The property was in the hands of a receiver at the time of the entry of the final decree, and the primary purpose of the provisions in such decree relating to rates was to protect the property against dissipation resulting from its operation at confiscatory rates. But the restraining provisions in the final decree against the city and county in respect to rates and charges expressly ran in favor of the company and its successors, as well as the receiver and his successors or assigns. In framing the decree, appropriate language to that effect was apparently chosen with meticulous care. Moreover, after the receiver had been discharged and while the case was pending on appeal from the decree, the city and county and the company filed in the appellate court the stipulation previously adverted to in which it was recited that the company was the successor in interest and assignee of the receiver; that it had become the owner and possessor of the property and rights of The Denver Tramway Company and the receiver; and that it be substituted as a party in place and stead of the receiver. The substitution was made. Although the property was no longer in the hands of a receiver, the decree was affirmed without modification, disturbance, or dilution in respect to its provisions relating to rates. And after the mandate was spread, the district court entered an order which provided that the company be substituted in lieu and instead of the receiver, and that as such substitute and successor it be entitled to all the benefits and subject to all the burdens and requirements of the decree which except for such substitution would accrue to and rest upon the receiver. Viewed in the light of the terms and provisions contained in the decree, in the light of affirmance of the decree after the property had been released from the custody of the court, and in the light of the order entered on the mandate, it cannot be said that the sole purpose and function of the decree in respect to rates was to conserve the property while in receivership against dissipation resulting from operation at confiscatory rates. And having custody of the property during the receivership with power to protect it in that manner against the ravages of confiscatory rates, the court did not lose jurisdiction after physical possession passed to the company as purchaser and successor in interest to the receiver to act in aid of its jurisdiction in making its decree effectual. Julian v. Central Trust Co., 193 U.S. 93, 24 S.Ct. 399, 48 L.Ed. 629; Wabash Railroad Co. v. Adelbert College, 208 U.S. 38, 28 S.Ct. 182, 52 L.Ed. 379; Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230; Bethke v. Grayburg Oil Co., 5 Cir., 89 F.2d 536.

■■ Another ground of the motion to dissolve and dismiss the injunction granted in the final decree was that conditions surrounding the street railway system then operated were in no manner similar to conditions now prevailing in respect to such transportation system. A preventive injunction is to be cast in terms reasonably adjusted to present conditions, and it is to be read in the context of its circumstances. But it is continuing and should be subject to adaptation as events change. It is permanent in the sense that it enjoins the offending party from doing that which he is doing or threatening to do without present legal or equitable right, to the injury of another. But under long recognized practice in equity, it is subject to modification in the interest of adjustment to changed conditions, or to complete vacation when change in conditions end all need for it. United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999; Milk Wagon Drivers' Union v. Meadowmoor Dairies,

312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836; Western Union Telegraph Co. v. International Brotherhood of Electrical Workers, 7 Cir., 133 F.2d 955; Hygrade Food Products Corp. v. United States, 8 Cir., 160 F.2d 816; Ladner v. Siegel, 298 Pa. 487, 148 A. 699, 68 A.L.R. 1172; Santa Rita Oil & Gas Co. v. State Board of Equalization, 112 Mont. 359, 116 P.2d 1012, 136 A.L.R. 757. But passage of the property from the hands of the receiver into the ownership and operation of the company, changes in methods of operation, and changes in economic conditions, without any showing that the rates now being charged and collected by the company are excessive, without any showing that those in whom the power is vested desire or contemplate the effectuation of lower rates, and without any showing that the restraining provisions in the decree are presently handicapping or proscribing any effort being exerted or contemplated to effectuate different rates in the manner outlined in Berman v. City and County of Denver, supra, is not enough to require the complete vacation of the final decree insofar as it relates to rates.

■■ The further contention urged for reversal of the order appealed from is that a prohibitive injunction is to be construed in the light of the law existing at the time it was entered, and that since the entry of the final decree in this case the law has undergone such change as to make proper the vacation of the decree insofar as it relates to fares. Even though a decree granting preventive injunctive relief appears on its face to be permanent, a court of equity has inherent power to vacate and set it aside if subsequent to its entry the law has been so changed that the continuance of the injunction is unjust, inequitable, or unwarranted. State of Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 421, 15 L.Ed. 435; Hodges v. Snyder, 45 S.D. 149, 186 N.W. 867, 25 A.L.R. 1128; Ladner v. Siegel, supra; Sontag Chain Stores Co. v. Superior Court in and for Los Angeles County, 18 Cal.2d 92, 113 P.2d 689; Santa Rita Oil Co. v. State Board of Equalization, supra. At the time of the entry of interlocutory order and at the time of the entry of the final decree, jurisdiction of the court of the subject matter was predicated upon diversity of citizenship with the requisite amount in controversy. Title 28, section 1342, United States Code Annotated, became effective September 1, 1948. It provides in effect that the district courts of the United States shall not enjoin, suspend, or restrain the operation of or compliance with any order affecting rates chargeable by a public utility and made by a state administrative agency or a rate-making body of a state political subdivision where jurisdiction is based solely upon diversity of citizenship or repugnance of the order to the Constitution of the United States, and the order does not interfere with interstate commerce, and it has been made after reasonable notice and hearing, and a plain, speedy, and efficient remedy may be had in the courts of such state. At the time of the entry of the final decree, the court had jurisdiction to enjoin the enforcement of rates which were confiscatory. The company in its motion for enlargement of the injunctive relief previously granted and supplemental complaint did not seek to enjoin any rate. The city and county did not seek by response or otherwise to uphold and sustain any rate. And in its order, the court did not undertake to enjoin, suspend, or restrain the operation of or compliance with, any order made by a state administrative agency or a rate-making body of a state political subdivision affecting rates chargeable by the company. Section 1342 did not interject a change in the law which requires the vacation of the final decree.

■ The remaining contention of the city and county requiring consideration is that where the law establishes a procedure by which legal and non-confiscatory rates to be charged and collected by a street transportation company may be fixed, neither a state court nor a federal court should intervene and exercise equitable jurisdiction until that procedure has been exhausted. The several ordinances relating to rates to which reference has been made were enacted upon the assumption or postulate that the city council of the city and county had authority in law to enact regulatory measures of that kind. But as

already indicated, it was said in Berman v. City and County of Denver, supra, that the city council was not vested with such power. It was held that the power to regulate such rates is reposed in the people and can be exerted only through the initiative upon a vote of the qualified taxpaying electors as by charter provided. But the final decree in this case does not operate to limit or restrict the exercise in full measure of the power to fix and regulate in the manner prescribed by existing law reasonable and non-confiscatory fares to be charged and collected by the company. The city and county does not suggest that any effort is in progress or contemplated to fix and regulate through the initiative upon a vote of the qualified taxpaying electors as by charter provided rates of fare to be charged and collected by the company. And the company does not seek to invoke the terms of the final decree to interfere in any manner with the fixing and regulation of new or different fares in the manner now prescribed by controlling law. In the circumstances presented, it lay within the range of the sound judicial discretion of the court to deny the motion to dissolve and dismiss the restraining provisions of the final decree.

Affirmed.