Dravosburg Housing Association, Appellant *v.* The Borough of Dravosburg and the Dravosburg Sanitary Authority, Appellees.

Argued October 6, 1982, before President Judge CRUMLISH, JR. and Judges MACPHAIL and DOYLE, sitting as a panel of three.

*Bart M. Beier,* for appellant.

*W. J. Helzlsouer, Shuster and Helzlsouer,* for appellee, Borough of Dravosburg.

*Arnold V. Plum,* with him *W. Richard Booth, Plum & Booth,* for appellee, The Dravosburg Sanitary Authority.

OPINION BY JUDGE MACPHAIL, January 12, 1983:

Sometime prior to 1964, the Dravosburg Housing Association (Association), a Pennsylvania non-profit corporation, purchased from the United States government, a housing development in the Borough of Dravosburg (Borough) consisting of some 250 housing units, the land on which the buildings were erected, and the streets, utility lines and sewage lines which were connected to the buildings and ran under the streets. Subsequently, the Borough created the Dravosburg Sanitary Authority (Authority) to put in place a sewage system for the Borough and adopted an ordinance requiring all residents of the Borough to become a part of and make use of the sanitation facilities. The Association then brought an action in equity against the Authority and the Borough alleging that it had its own sewage system and, therefore, should not be required to become a part of the Authority's sewage facility system.

That litigation was resolved by a consent decree dated July 16, 1964 which is at the heart of the instant appeal. By its terms, the decree provided that the Association would grant and convey to the Borough the streets it owned and the sewage facilities it owned.

More pertinent to the instant appeal was the following language in the decree:

3. It having been estimated that the initial annual maintenance cost of the sewer system to be constructed by the Defendant, Dravosburg Sanitary Authority, will be approximately $25,000.00, and that the Defendants having estimated the share of said cost to be borne by Plaintiff to be approximately 25% or approximately $6,250.00, based on a previously proposed unit system of calculating charges, and Defendants, recognizing the savings to them involved in the servicing of large consumers, Defendant, Borough of Dravosburg, shall cause to be enacted the necessary Ordinances to effectuate a maintenance cost schedule based on water use, said schedule to contemplate a graduated blockrate with the result that Plaintiff's share of the total annual maintenance cost shall be approximately 20% or approximately $5,000.00, as based on present estimates.

Additionally, the decree provided that:

4. The within decree shall be finally determinative of the issues between the parties hereto and the above captioned action shall be and the same hereby is dismissed with prejudice, each party to bear own costs.

Pursuant to the terms of that decree, the Borough adopted an ordinance (No. 491) fixing a rate schedule which resulted in the Association paying rates in accord with the decree.

In 1971 a class action was instituted in equity by individual electors, taxpayers, citizens and residents of the Borough naming the Authority, the Borough and the Association as Defendants and alleging that the consent decree was discriminatory and illegal because it provided the Association with an unfair rate

advantage. The plaintiffs alleged, *inter alia,* that the 1964 consent decree was the result of fraud and collusion on the part of the defendants and/or their individual members. The trial court found no discrimination and no evidence of fraud or collusion which would render the decree illegal. The class action suit was, accordingly, dismissed.

In 1978, the Borough passed amendments to ordinance No. 491 which established a new rate schedule, the effect of which was to require the Association to pay more than it was obligated to pay under the terms of the consent decree. The Association then instituted an action in equity against the Borough and the Authority to enforce the terms of the 1964 consent decree. The defendants answered by averring, *inter alia,* that the provisions of the 1964 decree were discriminatory, unreasonable and illegal in that the Association was paying less than its proportionate share of the cost of operating the sewage system contrary to various federal and state laws and regulations, including the Federal Water Pollution Control Act, §204(b)(1)(A), 33 U.S.C. §1284(b)(1)(A) (Supp. 1982), and the terms of the lease agreement negotiated between the Borough and the Authority.

After a non-jury trial, the chancellor found that the passage of time had drastically changed the consequences of enforcing the 1964 decree, that that decree did not encompass a fixed set of terms which could be satisfied (thus discharging the obligations of the parties), that the decree should be treated as an injunction subject to modification as the equities might require and that since the decree no longer represented an equitable agreement, it should not be enforced. The Association's suit was dismissed and exceptions to the decree were likewise dismissed. This appeal followed.

It is the Association's contention that the 1964 consent decree cannot be modified as set aside without the consent of the parties unless the decree was entered as the result of fraud, accident or mistake. Since the trial court's decree was entered without a finding that any of those elements were present, the Association would have us reverse. In addition, the Association contends that the evidence in the record of this case demonstrates that the terms of the 1964 decree are fixed with sufficient certainty that they are fully applicable to today's conditions. The Borough and the Authority, of course, contend that the trial court was well within its authority in refusing to enforce the 1964 decree.

Our scope of review in equity matters is limited to a determination of whether the chancellor committed any error of law or abused his discretion. *Sack v. Feinman,* 489 Pa. 152, 413 A.2d 1059 (1980).

As we analyze this case, it appears to us that if the chancellor was correct that the 1964 decree was subject to modification by the court or had lost its vitality by reason of changing circumstances, then the final decree which is the order appealed from here, must be affirmed; but if the chancellor erred in his conclusion that the 1964 decree was subject to modification by the court, then the final decree must be set aside.

There is strong support in Pennsylvania law for the Association's contention that in the absence of fraud, accident or mistake, a court has neither the power nor the authority to vary or modify the terms of a consent decree. *Pennsylvania Human Relations Commission v. A. K. Graybill, Jr., Inc.,* 482 Pa. 143, 393 A.2d 420 (1978), *Cooper-Bessemer Co. v. Ambrosia Coal and Construction Co.,* 447 Pa. 521 291 A.2d 99 (1972), *Jones Memorial Baptist Church v.*

*Brackeen,* 416 Pa. 599, 207 A.2d 861 (1965), *Watson v. City of Sharon,* 45 Pa. Commonwealth Ct. 285, 406 A.2d 824 (1979), *Commonwealth v. U.S. Steel Corp.,* 15 Pa. Commonwealth Ct. 184, 325 A.2d 324 (1974) and *Commonwealth v. Rozman,* 10 Pa. Commonwealth Ct. 133, 309 A.2d 197 (1973). In *Rozman,* this Court held that a consent decree is an agreement binding upon the parties thereto who cannot be allowed to repudiate that to which they agreed for purposes of their own and for their own benefit. In *U.S. Steel* we held that no matter how distasteful a consent decree may later turn out to be to the parties, it remains binding upon them and cannot be changed by a court unless amendments thereto are submitted by the parties subject to the decree. The Superior Court of Pennsylvania has held that a consent decree is so conclusive that it will be reviewed only by a showing that an objecting party's consent was obtained by fraud or that the decree was based upon *mutual* mistake. *Baran v. Baran,* 166 Pa. Superior Ct. 532, 72 A.2d 623 (1950). In *Universal Builders Supply, Inc. v. Shaler Highlands Corp.,* 405 Pa. 259, 175 A.2d 58 (1961), our Supreme Court reversed an order of the trial court which modified a consent decree because the trial court felt that the party defending the decree would be unconscionably enriched if it was not modified. The Supreme Court said that the trial court had no power or authority to modify the decree in *any* manner, absent fraud, accident or mistake. In the instant case, the learned chancellor attempted to distinguish *Universal Builders* on the ground that the decree entered there embodied a fixed amount to be paid within a specific time. We cannot deny that this is a fair reading of the decree but we have searched the opinion of the Supreme Court in vain to find any language that would indicate that it is *only* when a consent de-

cree is in a fixed amount to be paid in a specified time that it is enforceable. To the contrary, the Court in *Universal Builders* uses the same general language we have previously cited to hold a consent decree binding upon the parties and beyond judicial modification.

In support of his decree, the learned chancellor here notes that where the circumstances and status of the parties are shown to have changed so as to make it just and equitable to do so, other courts have modified equitable decrees, especially where the proceedings are executory and continuing as he concludes this one is. The chancellor cites *Ladner v. Siegel*, 298 Pa. 487, 148 A. 699 (1930). It is true that such language does appear in the *Ladner* case, but the *Ladner* case does *not* involve a consent decree. This Court would certainly concur that in an equity case, where a preventive injunction is entered adversely as in *Ladner,* the court entering the decree may retain jurisdiction over it and modify it where there is a change in the controlling facts. The point is, however, that the 1964 consent decree here in dispute was *not* a preventive injunction and it was *not* entered adversely.

It is also true that the rule in the federal courts is different. Thus, in *United States v. Swift & Co.,* 286 U.S. 106 (1932) the United States Supreme Court specifically rejected the concept that a consent decree was to be treated as a contract rather than as a judicial act and held, as did the chancellor here, that where the circumstances change, an injunction can be modified even if entered by consent and even though its terms do not expressly permit modification. That Court says this can be done because of principles inherent in equity jurisdiction. Many federal cases have followed this principle. *See, e.g., Equal Employ-*

*ment Opportunity Commission v. Safeway Stores, Inc.,*
611 F.2d 795 (10th Cir. 1979), *cert. denied,* 446 U.S.
952 (1980), *Philadelphia Welfare Rights Organization
v. Shapp,* 602 F.2d 1114 (3d Cir. 1979), *cert. denied,*
444 U.S. 1026 (1980), and *Coca-Cola Co. v. Standard
Bottling Co.,* 138 F.2d 788 (10th Cir. 1943).[1]

Unfortunately for the Borough and the Authority,
however, they have been unable to point to a single
appellate case in Pennsylvania which has adopted the
principle applied by the federal courts. *Chandler v.
Borough of Brookhaven,* 48 Del. 205 (C.P. Pa. 1960)
does use that principle and points to *Ladner* as its
authority for doing so, but, as we have seen, *Ladner*
does not involve a consent decree.

We hold, therefore, that the rule in Pennsylvania
remains firm that where a decree in equity is entered
by the consent of the parties, it is binding upon the
parties until *they* choose to amend it.

Although the Borough and the Authority averred
that the 1964 decree was discriminatory, unreasonable
and illegal, the chancellor made no findings in this
respect. As we have previously noted, however, the
same equity court (but not the same chancellor) pre-
viously found in another suit involving the same de-
cree that the rates were *not* discriminatory presum-
ably, at least in part, because at that time the Borough
and the Authority contended that they were not dis-
criminatory. Nothing in the record of this case sup-
ports a conclusion that the agreement is illegal. Some
effort is made to show that the 1964 decree did not con-
template a sum for debt service in the "annual main-
tenance cost" and that this constitutes a mistake.
There is conflicting evidence on this point, of course,
but we think it is significant that no effort has been

---

[1] In addition, Fed. R. Civ. P. 60(b) now provides for the modi-
fication of a consent decree.

made by the Borough or the Authority to attack the consent decree between 1964 and 1978 on the grounds that a mistake had been made nor was any effort made to declare that decree illegal on the same grounds. In any event, the chancellor did not find the agreement illegal, nor did the chancellor in 1971 find the agreement illegal. In the instant case the chancellor simply refused to enforce the decree because of equitable considerations.

Finally, it is apparent that the chancellor did find the greement unreasonable in light of today's economy. Initially, we must repeat that unreasonable or not, unless the consent decree was the result of fraud, accident or mistake, it must stand even if it *now* appears that it is unfair or unreasonable. As Judge MENCER said in *Rozman,* any other result would produce "an untenable situation". 10 Pa. Commonwealth Ct. at 136, 309 A.2d at 199. We have, nevertheless, considered the alleged unfairness of the decree in light of the evidence presented. It seems true that the Assocation pays only 20% of the cost but uses 28% of the water. But, as pointed out in the 1971 opinion by Judge SMITH dealing with the discrimination issues, there was certainly some advantage to the Borough when it negotiated the consent decree and de minimus though it may be, some of those advantages continue yet today such as single metering and single billing for more than 250 users. Moreover, the rates were not fixed in dollar amount by the 1964 decree; they were fixed by a percentage which would take into account inflation and changing costs over the years. We realize that we may not disturb the findings of the chancellor which are supported by substantial evidence and will not do so in this case. We have commented on this aspect of the chancellor's opinion only to demonstrate that the agreement made

by the parties in 1964 may very well have contemplated the changing circumstances now cited by the chancellor to justify his refusal to enforce the consent decree.

Since the chancellor has failed to find the consent decree of 1964 to be the result of fraud, accident or mistake, it must be enforced. The final decree from which this appeal has been taken will be set aside and the case will be remanded for the entry of an appropriate decree consistent with this opinion.

ORDER

The order of the Court of Common Pleas of Allegheny County entered October 1, 1981 is reversed and vacated and the case is remanded for the entry of an appropriate decree consistent with the foregoing opinion.