**BLUE COMET DINER, Petitioner,**

v.

**PENNSYLVANIA HUMAN
RELATIONS COMMISSION,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 1, 2006.

Decided July 28, 2006.

Reargument Denied Sept. 25, 2006.

Basil G. Russin, Forty Fort, for petitioner.

Joseph T. Bednarik, Asst. Chief Counsel, Harrisburg, for respondent.

Before: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Blue Comet Diner petitions this Court to review an order of the Pennsylvania Human Relations Commission awarding back pay and prospective pay to Christine Seliga, a former employee of Blue Comet. The Commission issued this order after it found that Blue Comet had breached its agreement to reinstate Seliga to her job. In this case we consider the proper scope of an administrative hearing that is held by the Commission when presented with a complaint that a predetermination settlement of charges of discrimination has been breached.

In 2001, Christine Seliga, a waitress at Blue Comet, was discharged when she contracted hepatitis C. As a result, she filed a complaint with the Commission, asserting that her discharge violated the Pennsylvania Human Relations Act (Human Relations Act), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951–963. On April 16, 2003, Blue Comet's counsel executed a "Respondent and Complainant Agreement" (Settlement Agreement), stating that "[Seliga] will be eligible to return to work at the Blue Comet Diner. Starting May 1, 2003, [Seliga] will be scheduled to work 3rd shift." Reproduced Record at 98a (R.R. ——). The Settlement Agreement was entered on a form prepared by the Commission; referenced the docket number of Seliga's complaint; and was maintained by the Commission. As a result of the settlement, the Commission's Executive Director, Homer Floyd, notified Seliga and Blue Comet that the Commission was "closing the case." R.R. 100a.

When Seliga reported for work on May 1, 2003, Blue Comet's manager, Sharon Belletiere, asked her to leave because the other waitresses on the shift refused to work with Seliga and had threatened to quit. Thereafter, Seliga filed a petition for reconsideration of adjustment with the Commission alleging that Blue Comet had breached the Settlement Agreement. The Commission determined that sufficient evidence of breach had been presented to merit a hearing on the issue, and it appointed a hearing officer to conduct the proceeding, which took place on September 24, 2004.

Blue Comet's owner, Chalabosos Mantasas, testified that he employs approximately forty people in three shifts. According to Mantasas, the first complaints he received about Seliga's hepatitis were from customers, several of whom indicated that they would no longer patronize the diner if Seliga continued to work there. Several employees also informed Mantasas that they were unwilling to work with Seliga. All of these complaints occurred prior to Seliga's termination, and well before the parties entered into the Settlement Agreement. Mantasas testified that one employee resigned because of Seliga's medical condition, but this event also occurred prior to the execution of the Settlement Agreement.

Belletiere also testified on behalf of Blue Comet. She explained that she had read pamphlets on hepatitis C and was aware that it is transmitted primarily through contact with the blood of an infected person. She claimed to have explained this to Seliga's co-workers; however, one of those co-workers testified at the hearing that hepatitis C is "very contagious" and that she does not know how it is transmitted. R.R. 76a.

At the conclusion of the hearing, the parties opted to submit post-hearing briefs. Seliga's attorney indicated that he intended to seek an award of prospective pay in lieu of reinstatement. The hearing officer advised the parties to brief that issue as well as the claim that Blue Comet had breached the Settlement Agreement.

In its post-hearing brief, Blue Comet argued that reinstating Seliga would cause an exodus of virtually all of the diner's employees and many of its regular customers, thereby inflicting an "undue hardship" on the diner's business. It argued that under Section 12112(b)(5)(A) of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), it did not have to make an accommodation for Seliga.[1] Blue Comet raised no other defenses to Seliga's petition, nor did it make any legal argument regarding Seliga's request for an award of prospective pay.

The hearing officer issued his recommendation and proposed final order on January 11, 2005. There was no dispute that Blue Comet had breached the Settlement Agreement; the only question considered by the hearing officer was whether, under general principles of contract law, the breach was justified. The hearing officer held, first, that Blue Comet's reliance on the ADA was misplaced because Blue Comet's obligation arose under the Settlement Agreement.[2] Treating Blue Comet's hardship defense as one of impossibility of contract performance, the hearing officer next concluded that Blue Comet failed to meet its burden of proving impossibility because all of its evidence concerned events that occurred prior to the Settlement Agreement. The hearing officer recommended that the Commission award Seliga $8,679.20 for past lost earnings, $6,401.20 for prospective lost earnings in lieu of reinstatement, plus prejudgment and post-judgment interest at the statutory rate of 6% per annum. The Commissioners adopted the hearing officer's opinion and recommendations in a final order dated February 1, 2005. On March 1, 2005, Blue Comet petitioned this

1. Section 12112(b)(5)(A) of the ADA exempts an employer from making reasonable accommodations to an otherwise qualified employee with a disability where the entity can "demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

2. The Settlement Agreement was, as discussed below, authorized and governed by the terms of the Human Relations Act.

Court to review the Commission's adjudication.[3]

On December 15, 2005, this Court entered a *per curiam* order directing the parties to file supplemental briefs to address the question of whether the Commission had jurisdiction to enforce the Settlement Agreement. Specifically, we asked the parties to consider whether Section 42.73 of the Commission's Special Rules of Administrative Practice and Procedure (Special Rules), 16 Pa.Code § 42.73, conflicts with Section 10 of the Human Relations Act, 43 P.S. § 960, and whether this Court's decision in *Mechensky v. Pennsylvania Human Relations Commission,* 134 Pa.Cmwlth. 192, 578 A.2d 589 (1990), should be overruled. Thereafter, an *en banc* panel of this Court heard argument from the Commission on March 1, 2006.[4] The matter is now ready for disposition.

We consider, first, whether the Commission had jurisdiction to conduct a hearing on Blue Comet's alleged breach of the Settlement Agreement.[5] Blue Comet posits that Section 42.73 of the Special Rules, which empowers the Commission to en-

force a settlement agreement, conflicts with Section 10 of the Act, which requires the Commission to petition a court to enforce a final order. To the extent *Mechensky* supports the procedure followed by the Commission in this case, Blue Comet asks us to overrule that decision.

The Commission rejoins that Section 42.73 of the Special Rules does not conflict with Section 10 of the Human Relations Act but, rather, complements it. The Commission maintains that the regulation provides the necessary first step to the enforcement of a settlement agreement executed under the auspices of the Commission. Section 10 comes into play only after the Commission issues an adjudication. Of course, should the Commission adjudicate there has been no breach of a settlement agreement, then a Section 10 proceeding would never take place. Stated otherwise, the Commission's position is that a proceeding under Section 42.73 is a necessary predicate to an enforcement action under Section 10, and it may obviate the need for a Section 10 proceeding.[6]

---

3. The matter was submitted on briefs on September 1, 2005.

4. Blue Comet elected not to participate in oral argument on March 1, 2006.

5. The Commission argues in its supplemental brief that this Court has improperly raised, *sua sponte,* the issue of its power to enforce the Settlement Agreement under the guise of subject matter jurisdiction. In support, the Commission cites *Riedel v. Human Relations Commission of City of Reading,* 559 Pa. 34, 739 A.2d 121 (1999), wherein the Pennsylvania Supreme Court determined that this Court erred by considering, *sua sponte,* whether a local commission could enact and enforce certain provisions of a human relations ordinance. The Supreme Court admonished this Court for confusing the commission's *power* to do so with its *jurisdiction* over the general subject matter presented by the case, *i.e.,* whether appellee had committed an unlawful housing practice. The Commis-

sion's position, and its reliance on *Riedel,* is not without merit. However, on the spectrum between "power" and "jurisdiction," we believe the Commission's authority to conduct a hearing on an alleged breach of a predetermination settlement agreement is closer to a subject matter jurisdictional issue. In any event, in the interest of finality, we shall avoid this largely semantic issue and render a decision on the issue of jurisdiction, which is the important issue in this case.

Contrary to the claim asserted by Judge Smith–Ribner in footnote 1 of her dissent, we do not improperly raise *sua sponte* the issue of whether the Commission had the power to act in this case. As discussed in the preceding paragraph, we address this issue because the Commission raised it in the supplemental brief it filed in response to this Court's December 15, 2005, order.

6. In considering the arguments of the parties, we are cognizant that the Commission, like all

■ We agree with the Commission that it followed the proper procedure in this case. Nevertheless, we are constrained to conclude that the hearing officer erred in his implementation of Commission procedure by focusing only on whether a breach of the Settlement Agreement occurred. There has been, to date, no determination by the Commissioners that Blue Comet actually violated the Human Relations Act when it terminated Seliga based upon her medical condition. There must be a finding that a violation occurred before the Commission can order any remediation. We will therefore remand this matter to the Commission to determine whether Blue Comet violated the Human Relations Act.

We begin our analysis with a review of the statute.[7] The Human Relations Act provides that *"[i]t shall be an unlawful discriminatory practice ... [f]or any employer because of race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability ... to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual."* Section 5(a) of the Human Relations Act, 43 P.S. § 955(a) (emphasis added). The Commission, a body of eleven members, was created, *inter alia*, "[t]o initiate, receive, investigate and pass upon complaints charging unlawful discriminatory practices." Section 7(f) of the Human Relations Act, 43 P.S. § 957(f). The regulation defines "Commission" to be "the Commissioners, staff and counsel." 16 Pa.Code § 42.3(a).[8] Where the Commission finds probable cause for crediting the allegations of the complaints, "the Commission shall immediately endeavor to eliminate the unlawful discriminatory practice complained of by conference, conciliation and persuasion." Section 9(c) of the Human Relations Act, 43 P.S. § 959(c).[9] If the complaint cannot be resolved by conciliation, the Commission directs the "employer ... to answer the charges of such complaint at a hearing

---

administrative agencies, can exercise only those powers that have been conferred upon it by the legislature. *Pennsylvania Human Relations Commission v. Zamantakis*, 478 Pa. 454, 457, 387 A.2d 70, 72 (1978). It is also time-honored that the agency's interpretation of its enabling statute, and its own regulations, is entitled to great weight and will not be overturned unless clearly erroneous. *Eagle Environmental II, L.P. v. Department of Environmental Protection*, 584 Pa. 494, 511, 884 A.2d 867, 878 (2005); *Mack v. Civil Service Commission*, 817 A.2d 571, 575 (Pa. Cmwlth.2003). Thus, in determining whether the Commission acted properly here, we defer to its interpretation of its enabling legislation and its implementing regulations.

7. The Human Relations Act acknowledges that every Pennsylvanian has the right "to obtain employment for which he is qualified ... without discrimination because of race, color, familial status, religious creed, ancestry, handicap or disability, age, sex [or] national origin...." Section 3 of the Human Relations Act, 43 P.S. § 953.

8. As has been pointed out by this Court in *George Clay Steam Fire Engine and Hose Company v. Pennsylvania Human Relations Commission*, 162 Pa.Cmwlth. 468, 639 A.2d 893, 902 (1994), only by reviewing the context of the statute and regulation can it be discerned whether "Commission" means the staff or the agency head, *i.e.*, the Commissioners.

9. The probable cause determination is made by Commission staff. 16 Pa.Code § 42.3(a) states that "staff ... [determines] whether or not probable cause exists to credit the allegations of the complaint." If probable cause is not found, the complainant receives a no-action letter, which allows the complainant to file a private action against the perpetrator of the alleged discrimination in the appropriate court of common pleas. The complainant cannot file a civil action in a court without first presenting the complaint to the Commission for its review. 16 Pa.Code § 42.61; Section 12(c) of the Human Relations Act, 42 P.S. § 962(c)(1).

before the Commission at a time and place to be specified in [a written] notice." Section 9(d) of the Human Relations Act, 43 P.S. 959(d). If, after considering the evidence, the Commission finds that the respondent has engaged in unlawful discrimination, the Commission shall issue an order "to take such affirmative action, including, but not limited to ... reinstatement ... with or without back pay." Section 9(f)(1) of the Human Relations Act, 43 P.S. § 959(f)(1).

The Commission is vested with broad authority to adopt rules and regulations to effectuate the purposes of the Human Relations Act. Section 7(d) of the Act, 43 P.S. § 957(d).[10] To this end, the Commission has promulgated the Special Rules governing the conduct of hearings, including the facilitation and enforcement of prehearing settlements.

Section 42.72(b) of the Special Rules provides that "a conciliation agreement or other *predetermination settlement agreement may be entered as a consent order by the Commissioners* if all parties consent to the entry and will have the same force and effect as a final order issued by the Commission after a hearing on the merits of a complaint." 16 Pa.Code § 42.72(b) (emphasis added). In the present case, the Settlement Agreement was a "predetermination settlement agreement" intending to resolve Seliga's discrimination complaint; was entered on a pre-prepared Commission form; and was docketed with the Commission. The first question, then, is whether the Settlement Agreement "was

entered as a consent order by the Commissioners." 16 Pa.Code § 42.72(b).

■ The essential ingredients of a consent order entered into with an administrative agency has been explained in treatise authority as follows:

A consent order is an agreement reached in an administrative proceeding between parties one of which is usually the agency's litigation staff. *The agreement is then presented to the agency head. The agency then must decide whether to accept it. If it does, it issues an order much as a court issues a consent decree.* The agency need not support the order by any factfinding or conclusions of law. Nonetheless a settlement order will have the same effect as an order issued after an administrative adjudication.

Charles H. Koch, Jr., ADMINISTRATIVE LAW AND PRACTICE 2D, § 5.43 at 155 (1997) (KOCH) (emphasis added). In short, a consent order (1) must be presented to and accepted by the agency head and (2) will have the same effect as a final order issued after a formal administrative hearing, *i.e.,* an "adjudication" as that term is defined in the Administrative Agency Law, 2 Pa.C.S. § 101.[11]

The Commission follows these fundamental administrative law principles with respect to the establishment of a valid and enforceable consent order. In *Pennsylvania Human Relations Commission v. Ammon K. Graybill, Jr., Inc.,* 482 Pa. 143, 393 A.2d 420 (1978), our Supreme Court con-

---

10. It states in relevant part:

The Commission shall have the following powers and duties: ... (d) To adopt, promulgate, amend and rescind rules and regulations to effectuate the policies and provisions of this act.
43 P.S. § 957(d).

11. Section 101 of the Administrative Agency Law defines an "adjudication" in pertinent part as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa.C.S. § 101.

sidered whether an agreement read into the record by lawyers for the Commission and for the respondent was a consent order. The terms of the agreement were presented to the Commission at its next meeting, and it voted to approve it. However, Graybill, the respondent corporation, never did approve it. Our Supreme Court concluded that a consent order had not been effected. In the absence of Graybill's approval, the Supreme Court explained that the Commission *"should have proceeded ... by resumption of the hearing and the eventual entry of whatever order* it determined to be appropriate." *Id.* at 149, 393 A.2d at 423 (emphasis added). Because one-sided, incomplete settlement was not a consent order, the Supreme Court held that it could not be enforced in a court proceeding.

■ The predetermination settlement between Seliga and Blue Comet could have been entered as a consent order by the Commission, but it was not. It was never presented to the Commissioners for their approval at their next meeting. *Id.* Indeed, the paragraph on the boilerplate Settlement Agreement that might have authorized the document's entry as a final consent order was crossed out. The deleted paragraph states:

> In reliance thereupon, the Respondent and the Complainant request the PHRC and the [Equal Employment Opportunity Commission] to ratify this agreement

and to close as adjusted voluntarily the above-docketed complaint charge. It is understood that the closure of this case by the Commission is contingent upon compliance by both parties with the provisions of this agreement.

R.R. 98a. The Settlement Agreement was signed by Blue Comet's attorney but not by the proprietor of Blue Comet, Seliga or any representative of the Commission.

■ On August 15, 2003, the Executive Director of the Commission sent a letter to Blue Comet's counsel stating that it was "closing this case as settled ... [by] the signed agreement executed between you and complainant." R.R. 100a. The letter does not recite that the Commissioners met and voted to ratify the settlement agreement as a consent order; it does not recite that the Commissioners believed that Blue Comet's dismissal of Seliga violated the Human Relations Act. In the absence of these recitals, the letter does not memorialize a consent order between the Commissioners, Seliga and Blue Comet. What the letter does signify is a stand down by the agency staff not to proceed further on Seliga's complaint of unlawful discrimination.[12]

In sum, the Settlement Agreement executed by Blue Comet's counsel was not a consent order. It was a "predetermination" settlement by Commission staff, but it lacks the imprimatur of the Commission-

---

12. This staff action is consistent with Section 42.61 of the Special Rules, which states in relevant part as follows:

(a) If, after investigation, the staff determines that no probable cause exists to credit the allegations of the complaint or if, during or after investigation, the staff determines that the case is untimely filed, that the case is moot, that the Commission lacks jurisdiction, *that the parties have reached an agreement adjusting the complaint* or that another reason exists which legally justifies the

dismissal of the complaint, *the staff will make a finding reflecting that determination.*

(b) A staff finding will be reported to the Executive Director, who may close the case or take other action as may be deemed necessary or appropriate. The Executive Director may appoint, in writing, another staff person who is authorized to close cases in the Executive Director's absence.

16 Pa.Code § 42.61(a)-(b) (emphasis added).

ers. It is the obverse of *Graybill,* where the settlement in question was approved by the Commissioners at a meeting but not by the respondent. In accordance with *Graybill,* we hold that the Settlement Agreement was not a consent order.[13]

The nature of the Settlement Agreement is not an academic question; it bears directly on how the Commission should have responded to Seliga's assertion that Blue Comet refused to honor its agreement to reinstate her. It bears also on the question of whether Section 42.73 of the Special Rules conflicts with Section 10 of the Human Relations Act.

Again, treatise authority is instructive on the interplay between administrative and court enforcement proceedings. As observed by Koch,

> [t]here is a tendency to lose interest in the adjudicative process at the point where the order becomes final, after all the opportunities for administrative and judicial review have passed. But there is a second stage which can be of immense practical importance: the enforcement and compliance process. *In reality the final order is both the end of one process and the beginning of another process.* ... An order has no meaning unless it affects conduct. In [a] benefit and license granting program, this impact necessarily follows the order. Either the benefit is paid out or it is not; either the license is granted or it is not. In the law enforcement context, however, the order must be given effect by some further action ... [that involves] the judicial process.

KOCH, § 5.70(1) (emphasis added). A final order directing an employer to reinstate an employee can be given effect, if not obeyed, only with the assistance of the

court. As noted, a consent order is a final order. *Id.* at § 5.43(1). Accordingly, like any final order or "adjudication," the entry of a consent order "is the beginning of another process." *Id.* at § 5.70(1).

Section 10 of the Human Relations Act, 43 P.S. § 960, identifies what Koch terms "another process" with respect to final orders of the Commission. Section 10 states:

> The complainant, the Attorney General or *the Commission may secure enforcement of the order* of the Commission or other appropriate relief. When the Commission has *heard and decided* any complaint brought before it, enforcement of its order shall be initiated by the filing of a petition in court, together with a transcript of the record of the hearing before the Commission, and issuance and service of a copy of said petition as in proceedings in equity.

43 P.S. § 960 (emphasis added). Section 10 contemplates enforcement of a Commission order in a judicial proceeding only after the Commission has "heard and decided" any complaint. This includes, of course, an adjudication entered at the conclusion of a formal administrative hearing, but it also includes a consent order, entered where the respondent has waived a hearing, upon approval of the Commissioners. This does not include, however, a decision of Commission staff to close its file on a complaint, *i.e.,* a predetermination settlement. In the absence of a final order, the second stage of enforcement, what Koch calls the "enforcement and compliance process" filed pursuant to Section 10, cannot begin.

When Blue Comet refused to honor its agreement to return Seliga to the third shift on May 1, 2003, Seliga petitioned "the Commission to consider whether [Blue

---

**13.** The Commission does not assert that the Settlement Agreement was a consent order; indeed, it claims that it was not an order at all.

Comet had] complied with the terms of adjustment or settlement, or both." 16 Pa.Code § 42.73(a).[14] She was authorized to take that step under Section 42.73 of the Special Rules, and this is an appropriate mechanism for "resuming" the hearing interrupted by the Settlement Agreement. Because the Settlement Agreement was not a final order, *i.e.*, a consent order, the Commission "should have proceeded ... by resumption of the hearing and the eventual entry of whatever order it determined to be appropriate." *Graybill*, 482 Pa. at 149, 393 A.2d at 423.[15]

 Although the Commission adopted the findings of the hearing officer and

entered an order it determined to be "appropriate," it never resumed the proceedings that were aborted by execution of the Settlement Agreement by Blue Comet's counsel. The result of those proceedings would have been a determination by the Commission as to whether Blue Comet's original dismissal of Seliga, as opposed to its refusal to reinstate her, violated the Human Relations Act. Section 9(c) of the Human Relations Act, 43 P.S. § 959(c). The hearing officer presumed that a violation occurred.[16] At oral argument before this Court, the Commission observed that the Commission's adjudication implicitly found a violation of the Human Relations

14. The procedure prescribed by Section 42.73 was specifically upheld by this Court in *Mechensky v. Pennsylvania Human Relations Commission*, 134 Pa.Cmwlth. 192, 578 A.2d 589, 594 (1990) ("[T]his Court does not find Section 42.73 to be an improper extension of the Act."). In that case, the complainant/employee, like Seliga, entered into a settlement agreement with her employer. The Commission closed the case as "satisfactorily adjusted," *id.* at 591, but it is not clear from the *Mechensky* opinion whether the settlement agreement was approved by the Commissioners as a consent order. *Mechensky* did not consider the interplay of the Special Rules and Section 10. *Mechensky* remains good law in that it clarifies that a settlement agreement reached under the oversight of the Commission is not a common law contract, even though it contains elements of a contract. A settlement deals with liability under the Human Relations Act by allowing staff to close a case (as opposed to dismissing it) while retaining jurisdiction to enforce the settlement by resurrecting the formal proceeding in the event of a breach. Because *Mechensky* does not consider the issues considered here, it is not inconsistent with our holding and need not be overturned.

15. In her dissenting opinion, Judge Smith–Ribner suggests that the result we reach today will have a far-reaching, adverse impact upon the Commission's limited resources. As discussed more fully above, Section 42.72(b) of the Special Rules provides a mechanism for entry of a predetermination settlement as a consent order, thus obviating the need for a

hearing on the issue of whether or not a violation of the Act has occurred. Had the parties in the instant case submitted the Settlement Agreement to the Commissioners for their approval, the Settlement Agreement would have been a final consent order that resolved the issue of whether Blue Comet's conduct violated the Human Relations Act. Under the dissent's view, the staff would bind the Commissioners to their finding that a violation has occurred and there would have been no need for a hearing on the merits of whether Blue Comet violated the Human Relations Act. This is contrary to well established principles of administrative law, and it is directly contrary to Section 7(f) of the Human Relations Act, 43 P.S. § 957(f), which charges the Commissioners to "pass upon complaints ... of unlawful discriminating practices." *See also George Clay Steam Fire Engine and Hose Company*, 639 A.2d at 901–903 (distinguishing the role of Commission *staff*, which determines whether probable cause exists and conducts conferences and conciliation meetings, from that of the *Commissioners*, who play no role in prosecuting complaints).

16. In fact, at the inception of the hearing, the hearing officer stated that "this hearing is not to determine discrimination, whether any unlawful discrimination occurred. It is to determine whether or not Blue Comet Diner breached [the Settlement Agreement]." R.R. 26a.

Act. However, the conclusion that a statute has been violated is not something that can be presumed or implied. The purpose of the Human Relations Act is to prohibit unlawful discrimination, and the core function of the Commission is to determine whether such unlawful discrimination has occurred. The Commission must therefore resume the proceeding interrupted by the Settlement Agreement, because, as discussed above, there has yet to be an adjudication by the Commissioners that Blue Comet violated the Human Relations Act.[17]

■ In sum, Blue Comet was aggrieved by the Commission's adjudication, and it had the right to appeal to the court "vested with jurisdiction" over Commission adjudications, which is the Commonwealth Court. Likewise, there can be no doubt that the Commission's decision was an adjudication, which is a

> *final order*, decree, decision, determination or ruling by an agency *affecting personal or property rights, privileges, immunities, duties, liabilities or obligations* of any or all of the parties to the proceeding in which the adjudication is made.

Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101 (emphasis added). Because the Commission's order requires Blue Comet to take remedial steps by way of restoring lost wages to Seliga, it is an order that affects the rights and duties of Blue Comet. Unmistakably, it is an adjudication. *Id.* The Commission erred, however, by failing to render a final determination on the core issue in this or any other case arising under the Human Relations Act: is the conduct alleged by Seliga in her complaint unlawful discrimination?[18] Until such a finding is made, the Commission cannot order Blue Comet to undertake remediation of any sort.[19]

Accordingly, we vacate the Commission's order and remand the matter for entry of further findings and, if necessary, further proceedings on Seliga's complaint in accordance with this opinion.

## ORDER

AND NOW, this 28th day of July, 2006, the order of the Pennsylvania Human Relations Commission dated February 1, 2005, in the above-captioned matter is hereby VACATED and the matter is REMANDED for a determination on whether Blue Comet Diner violated the Pennsylvania Human Relations Act.

Jurisdiction is relinquished.

Dissenting Opinion by Judge SMITH–RIBNER.

I dissent from the majority's decision to vacate the order entered by the Pennsylvania Human Relations Commission (Commission) and to remand this case for the purposes indicated in the majority's order.

---

17. At best, there is a determination that Blue Comet violated a predetermination settlement, which is not, itself, a violation of the Human Relations Act.

18. It may, or may not, be a defense to a charge of unlawful discrimination that other employees and customers would not accept Seliga in their presence because of her disease. These reasons would not suffice were, for example, Seliga's race, not her affliction by hepatitis C, the factor that caused her dismissal.

19. By our holding today, we do not suggest that settlement negotiations between Seliga and Blue Comet were a meaningless exercise. Clearly the present dispute would have been avoided entirely if Blue Comet had reinstated Seliga in accordance with the terms of the Settlement Agreement. As the case now stands, the Commission may determine on remand that Blue Comet violated the Human Relations Act, and, in that event, the terms of the Settlement Agreement will be relevant in fashioning an appropriate remedy.

Respectfully, I disagree with the reasoning that the majority espouses to support its decision to vacate and remand. More fundamentally, however, I dissent because the majority raises *sua sponte* the question of whether the Commission possessed the power to determine whether Petitioner complied with the Settlement Agreement between the parties to resolve the employment discrimination complaint filed by Christine Seliga.

In its supplemental brief, the Commission argues that the majority has improperly raised an issue concerning the Commission's power to conduct an administrative hearing to determine Petitioner's compliance. Notwithstanding the majority's acknowledgement that the Commission's position is not without merit and that the Pennsylvania Supreme Court has admonished this Court about confusing the Commission's "power" with its "jurisdiction" to act in a particular case, the majority nevertheless asserts that "on the spectrum between 'power' and 'jurisdiction,' we believe the Commission's authority to conduct a hearing on an alleged breach of a predetermination settlement agreement is closer to a subject matter jurisdictional issue. In any event, in the interest of finality, we shall avoid this largely semantic issue and render a decision on the issue of jurisdiction, which is the important issue in this case." Opinion at 1061, n5. To the contrary, the issue is not one of semantics; rather, it is one of law.

This case does not involve the Commission's lack of jurisdiction over the general subject matter involved, *i.e.*, resolution of employment discrimination complaints within the Commonwealth; instead, it involves the majority's disregard of the Commission's rational interpretation of its regulations and disregard of the statutory powers granted to the Commission to at-

tempt to eliminate employment discrimination. *See* Section 10 of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 960; Commission Special Rules of Administrative Practice and Procedure (Special Rules), 16 Pa.Code § 42.73. Thus the majority has erred by proceeding on an issue that it raised *sua sponte* in direct contravention of admonishments by the Supreme Court not only in *Riedel v. Human Relations Commission of Reading,* 559 Pa. 34, 739 A.2d 121 (1999), but also more recently in *Heath v. Workers' Compensation Appeal Board (Pennsylvania Board of Probation and Parole),* 580 Pa. 174, 860 A.2d 25 (2004).

In *Riedel* the Supreme Court reversed this Court's order and remanded the matter, noting the local human relations commission's argument that this Court improperly *sua sponte* raised and addressed the issue of whether the commission exceeded its authority by enacting and enforcing an ordinance provision making it unlawful for any person to, *inter alia,* coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of any right granted or protected by the ordinance. The commission indicated that the appellee had not raised the issue in his brief to the trial court, in his statement of matters complained of on appeal or in his brief to this Court. In agreeing with the commission, the Supreme Court found that this Court's *sua sponte* ruling on the ordinance was not a jurisdictional determination but instead involved the commission's authority to act. The court reiterated the distinction between an agency's authority to act and its jurisdiction:

> Jurisdiction and power are not interchangeable although judges and lawyers often confuse them—*Hellertown Borough Referendum Case,* 354 Pa. 255, 47 A.2d 273 (1946). Jurisdiction

relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

> *Delaware River Port Auth. v. PA. Public Utility Commission*, 408 Pa. 169, 178, 182 A.2d 682, 686 (1962); *see also Beltrami Enterprises, Inc. v. Commonwealth of PA, Dep't of Environmental Resources*, 159 Pa.Cmwlth. 72, 632 A.2d 989, 993 (1993) (fact that administrative agency may not have power to afford relief in particular case presented is of no moment to determination of its jurisdiction over general subject matter of controversy).

*Riedel*, 559 Pa. at 39–40, 739 A.2d at 124. The Supreme Court explained that the commission clearly possessed jurisdiction over the general subject matter at hand in *Riedel*, just as the Commission in the case *sub judice* clearly has jurisdiction over the general subject matter before it, *i.e.*, whether unlawful employment discrimination has occurred. The Supreme Court concluded in *Riedel* that this Court improperly reversed the trial court on the basis of a waived issue that had been raised by this Court *sua sponte*. Because the issue presented did not raise the local commission's jurisdiction, this Court could not properly *sua sponte* raise the issue under the jurisdictional exception to the waiver rule.

I also point out that in *Heath* the Supreme Court vacated this Court's order and remanded the case for reconsideration of the merits of the claimant's appeal because this Court improperly raised *sua sponte* an issue that had not been raised by the employer in that workers' compensation case. The Supreme Court disagreed with this Court's conclusion that the "personal animus" exception was in fact jurisdictional. The Supreme Court explained the following:

> "[T]he test for determining whether a court has jurisdiction of the subject matter is the competency of the court to determine controversies of the *general class* to which the case presented for its consideration belongs." [*Strank v. Mercy Hospital of Johnstown*, 376 Pa. 305, 309, 102 A.2d 170, 172 (1954) ] (emphasis in original). In other words, we determine whether "the court had power to enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case." *Id.*

*Heath*, 580 Pa. at 180–181, 860 A.2d at 29.

Petitioner raised four issues in the present appeal before the Court, all essentially related to whether Petitioner would suffer undue hardship if it had to comply with the Settlement Agreement. At no time did Petitioner challenge the Commission's jurisdiction, which is clear, and at no time did Petitioner challenge the power of the Commission to act under 16 Pa.Code § 42.73. It is obvious from a cursory review of Supreme Court precedent that the issue raised *sua sponte* by the majority goes to the power of the Commission to act, not to its jurisdiction.[1]

1. Writing for the majority, Judge Leavitt states that the Court by *per curiam* order of December 15, 2005 directed the parties to file supplemental briefs with the Court addressing whether the Commission had jurisdiction to enforce the Settlement Agreement. The ma-

jority then states in response to the dissent that the majority addressed whether the Commission had the power to act because it was the Commission that raised the matter in its supplemental brief. Despite the majority's description of how it arrived at addressing an

Next, I disagree with the majority's decision to take a clearly rational and long-standing Commission regulation, supported by statutory law and case law, *see Mechensky v. Pennsylvania Human Relations Commission*, 134 Pa.Cmwlth. 192, 578 A.2d 589 (1990), and then redefine it and reject the Commission's interpretation of its regulation. The majority reasons that because the Settlement Agreement is not a "consent order" the Commission should have "resumed" a merits hearing and eventually entered whatever order that it deemed appropriate.

Section 42.73 of the Special Rules provides as follows:

§ 42.73. **Reconsideration of adjustment.**

(a) A party shall have the right to petition the Commission to consider whether another party has complied with the terms of adjustment or settlement, or both.

(b) A party may file a petition under this section regardless of whether a finding of probable cause has been made in the case.

(c) The Commission will consider the petition and take whatever action it deems necessary or appropriate, as justice may require; except that the Commission will not, in any case, enforce an adjustment or settlement which is not in writing and signed by the party against whom enforcement is sought.

Section 10 of the Act, 43 P.S. § 960, provides in pertinent part:

The complainant, the Attorney General or the Commission may secure enforcement of the order of the Commission or other appropriate relief. When

the Commission has heard and decided any complaint brought before it, enforcement of its order shall be initiated by the filing of a petition in court, together with a transcript of the record of the hearing before the Commission, and issuance and service of a copy of said petition as in proceedings in equity.

The Commission is correct in explaining that 16 Pa.Code § 42.73 governs procedure to be followed when a party complains about non-compliance with the terms of a settlement agreement, whereas Section 10 of the Act governs only when the Commission has entered an order in a case that may be enforced only in judicial proceedings. The Commission did not enter an order to resolve the employment discrimination complaint filed by Seliga. Rather, it resolved Seliga's complaint through the mechanism of a Settlement Agreement, and consequently Section 10 has no applicability. The sole issue before the Commission pertained to Seliga's reconsideration request to obtain Petitioner's compliance, which resulted in the Commission's hearing to determine the facts related to Petitioner's alleged non-compliance and ultimately in the Commission's February 1, 2005 final order directing Petitioner to pay Seliga back pay and imposing other remedies for non-compliance with the Settlement Agreement.

To implement the legislative purpose behind the enactment of the Pennsylvania Human Relations Act, the legislature delegated power to the Commission to "adopt, promulgate, amend and rescind rules and regulations to effectuate the policies and provisions of [the] act." Section 7(d) of the Act, 43 P.S. § 957(d). In reviewing Commission decisions, this Court may not

issue that was not raised originally by either party to this appeal, it is fundamentally clear that it was the Court which first raised the issue, not the Commission. The majority

adopted the Court's action and, accordingly, has improperly raised *sua sponte* whether the Commission had the power to act as it did.

reject the Commission's interpretation of any rule or regulation that it has lawfully adopted and may not substitute that interpretation with the Court's own judgment or notion of how a rule or regulation should be interpreted. *See Pennsylvania Human Relations Commission v. Uniontown Area School District,* 455 Pa. 52, 313 A.2d 156 (1973) (reviewing court is not free to substitute its discretion for that of an administrative agency acting within its statutory powers).

Consistent with its statutory mandate the Commission is required under Section 9(b) of the Act, 43 P.S. § 959(b), to encourage parties to enter predetermination settlement agreements and under Section 9(c), 43 P.S. § 959(c), to endeavor to eliminate unlawful discriminatory practices by "conference, conciliation and persuasion." The Commission correctly notes the legislature's intent for resolution of discrimination complaints through the settlement process and, in concert therewith, intent for the Commission to use its authority to decide whether a party has complied with a settlement agreement and to take whatever action is necessary to gain compliance. Accordingly, the procedure followed in the case *sub judice* was statutorily sanctioned and was in accordance with *Mechensky.*

In *Mechensky* this Court concluded that 16 Pa.Code § 42.73 represents a proper extension of the Act, noting that the regulation allows a complainant to petition the Commission to decide whether a respondent has complied with terms of a settlement agreement and that the Commission shall take whatever action is necessary to effectuate compliance. The complainant in *Mechensky* entered into a settlement agreement with the employer; thereafter, the complainant alleged that the agreement was violated and then sought reconsideration pursuant to Section 42.73. The Commission conducted a hearing and ultimately concluded in its first order in June 1988 that the employer violated terms of the settlement agreement when it released information about the complainant's termination. In its September 1989 order the Commission awarded nominal damages for the employer's non-compliance with the settlement agreement. The identical procedures sanctioned in *Mechensky* were followed here, and no basis exists for overturning *Mechensky* or for concluding that the Commission has no statutory authority to take the necessary action in its discretion to effectuate compliance with the Settlement Agreement.

In conclusion, I note another significant position advanced by the Commission. It cites *Baker v. Pennsylvania Human Relations Commission,* 507 Pa. 325, 489 A.2d 1354 (1985), to support its request for the Court to consider the role that the Commission plays in the legislative scheme under the Act and to recognize the consequences of the Court's refusal to adhere to legislative authority delegated to the Commission. In *Baker* the Supreme Court took judicial notice of the Commission's annual reports that were required to be filed with the legislature. The Commission refers to its annual report for the year ending June 30, 2005, showing that 1,387 discrimination claims (or 29 percent of the closed cases) were resolved through settlement agreements. Clearly, requiring the Commission to conduct full merits hearings in all 1,387 settlement agreements, if non-compliance was alleged, would adversely impact upon the Commission's ability to resolve discrimination complaints through conciliation and persuasion, would adversely impact upon the Commission's limited resources, *see Baker,* and more importantly would contravene legislative

purposes.[2]

Because the Commission properly acted in this case, its order now under review should be affirmed.

Dissenting Opinion by Judge PELLEGRINI.

I respectfully dissent because the majority, based on an issue not raised, holds that a settlement agreement cannot be enforced by the Pennsylvania Human Relations Commission (Commission) until the Commission adjudicates the underlying merits of the claim that led to the settlement agreement. By doing so, the majority improperly vitiates an agreement voluntarily entered into by the parties. Unlike the majority, I would place settlement agreements on a parity with Commission orders and consent orders and allow them to be enforced, as written, but only in this Court.

Seliga (Complainant) filed a complaint with the Commission in 2001 alleging that she had been a waitress for Blue Comet Diner (Employer), but after contracting hepatitis C, she was terminated from her employment in violation of the Pennsylvania Human Relations Act (Act).[1] On April 16, 2003, Complainant and Employer executed a Respondent and Complainant Agreement (Settlement Agreement) which provided that Employer agreed that Complainant "will be eligible to return to work at the Blue Comet Diner. Starting May 1, 2003, [Complainant] will be scheduled to work 3rd shift." In exchange for her reinstatement, Complainant agreed to have her complaint dismissed by the Commission.

After a hearing, the hearing officer issued a recommendation and a proposed final order finding that Employer breached the Settlement Agreement and recommended that the Commission award Complainant $8,679.20 for past lost earnings, $6,401.20 for prospective lost earnings in lieu of reinstatement, plus pre-judgment and post-judgment interest at the statutory rate of 6% per annum. The Commission adopted the hearing officer's opinion and recommendations by order dated February 1, 2005. This appeal by Employer followed.[2]

---

**2.** The majority responds to the dissent's view that if the majority's rationale applied the Commission would be required to conduct a merits hearing in each of the 1,387 cases closed by settlement agreements if non-compliance were alleged. In its response the majority references Section 42.72(b) of the Special Rules and its mechanism for entering a predetermination settlement as a consent order, thereby eliminating the need for a hearing on whether a violation of the Act has occurred. The majority assumes that a merits hearing can be avoided by the simple act of entering a predetermination settlement as a consent order under Section 42.72(b) of the Special Rules, but the majority ignores that all parties to a settlement agreement along with the Commissioners must agree to the entry of a consent order. That consent decree would be enforceable in the event of non-compliance only through an enforcement action filed by the Commission with this Court.

In any event, the majority's analysis fails to give proper weight to the fact that Section 9(b)(4) of the Act, 43 P.S. § 959(b)(4), expressly mandates the Commission, *i.e.*, Commission staff, "to encourage voluntary and informed predetermination settlements between parties" and that the regulation at 16 Pa.Code § 42.73, by the Commission's wholly reasonable interpretation, governs procedure to be followed when a party complains about non-compliance with an "adjustment or settlement" agreement. Such procedure is limited only by a requirement that the adjustment or settlement be in writing and signed by the party against whom enforcement is sought, with absolutely no requirement that it be entered as a consent order.

**1.** Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951–963.

On appeal, Employer only contends that the Commission erred by rejecting its defense that it would be legally impossible for it to perform its contractual obligation under the terms of the Settlement Agreement. Even though the parties have not raised the issue, we issued an order directing the parties to file supplemental briefs to address the issue of whether the Commission had jurisdiction to enforce the Settlement Agreement. We ordered that:

> [T]heir briefs shall consider whether the Commission regulation at 16 Pa.Code 42.73 conflicts with Section 10 of the Human Relations Act, Act of Oct 27, 1955, 43 P.S. 960 and whether this Court's holding in *Mechensky v. Pa. Human Relations Commission* should be overruled.

Without much discussion, the majority holds that the Commission has jurisdiction to enforce settlement agreements, but then goes on to hold that the Commission cannot enforce the Settlement Agreement because "it never resumed the investigation and proceeding that were aborted by Blue Comet's execution of the Settlement Agreement.... The Commission must therefore resume the proceeding interrupted by the Settlement Agreement, because ... there has yet to be an adjudication issued by the Commission." (Opinion at 1067.)

Not only does it make the question of whether the Commission can enforce a settlement decree moot because it is now a Commission order that all the parties agree can only be enforced by this court, but I respectfully dissent because the majority has:

· Decided the appeal based on a non-jurisdictional issue not raised by any of the parties.

· In deciding the issue not raised, rescinded a freely entered agreement between the parties.

· And as to the jurisdictional issue, the majority finds that the Commission can compel the enforcement of its own orders which is in direct violation of the Human Relations Act.

### I.

The majority holds that a settlement agreement cannot be enforced by the Commission until it determined the underlying merits that were short circuited by the settlement agreement were adjudicated. In other words, the settlement agreement means nothing and cannot be enforced, which certainly has a chilling effect on parties entering into settlement agreements. Nowhere in the briefs or in the order in which we directed that supplemental briefs be filed was this issue even suggested.

### II.

By making the settlement agreements non-enforceable as written, the majority puts both the complainant and the employer at risk. Complainants would have to make out the underlying discriminatory claim, and, if unsuccessful, the relief they obtained in their settlement agreements would be taken away. For employers, if the claim was made out, they would have to pay money, pay more money or do things that they did not agree to do in the settlement agreements. By doing so, the majority ignores that settlement agreements are contracts and enforced accord-

---

2. Our scope of review of an adjudication by the Commission is to determine whether there was a violation of constitutional rights, an error of law, or whether findings of fact necessary to support the adjudication were supported by substantial evidence. *Parks v. Pennsylvania Human Relations Commission,* 848 A.2d 204 (Pa.Cmwlth.2004).

ing to principles of contract law, and we are not free to vary their terms absent a clear showing of fraud, duress or mutual mistake. *Pulcinello v. Consolidated Rail Corporation,* 784 A.2d 122 (Pa.Super.2001).[3] The majority has no basis to take away the bargain made by the parties to settle the employment dispute by nullifying a settlement agreement that they freely entered.

## III.

Now to the issue that we were asked to address—whether the Commission had subject matter jurisdiction to enforce the Settlement Agreement.[4] This issue is important because it determines what type of hearing or review a party receives by this Court once the Commission brings an enforcement action. If the Commission has jurisdiction, we would review its order in our appellate jurisdiction, and our scope of review would be the normal administrative agency scope of review.[5] If, however, the Commission does not have jurisdiction, depending on the effect of the Commission regulations on settlement agreements, either 1) the Commission would be required to bring a petition to enforce in our original jurisdiction, and we would make our own findings of fact and independently determine damages or equitable remedies or 2) the party seeking enforcement of the settlement agreement would have to file an action in the court of common pleas seeking enforcement as if it were another contract action.

No one contends that if a party breaches an order, including a Commission consent order, Section 10 of the Act, 43 P.S. § 960, requires that the enforcement of the order be brought in our original jurisdiction. That section provides:

> The complainant, the Attorney General or the Commission may secure enforcement of the order of the Commission or other appropriate relief. When the Commission has heard and decided any complaint brought before it, *enforcement of its order shall be initiated by the filing of a petition in court,* together with a transcript of the record of the hearing before the Commission, and issuance and service of a copy of said petition as in proceedings in equity. (Emphasis added.)

However, not all settlement agreements become a "consent order" under the Commission regulations. Section 42.72 of the Special Rules of Administrative Practice and Procedure for the Human Relations Commission (Special Rules), 16 Pa.Code § 42.72, provides:

---

3. The rule in Pennsylvania regarding modification of a consent decree is similar in that "where a decree in equity is entered by consent of the parties it is binding upon the parties until they choose to amend it." *Dravosburg Housing Association v. Dravosburg Borough,* 71 Pa.Cmwlth. 144, 454 A.2d 1158, 1162 (1983). This differs from the rule in federal courts which permits modification of an equity decree entered by consent even if its terms do not provide for modification. *Id.* In Pennsylvania, a consent decree in an equity action is not considered a legal determination by the courts, but is an agreement between the parties. *Felix v. Giuseppe Kitchens & Baths, Inc.,* 848 A.2d 943 (Pa.Super.2004).

4. "Questions of jurisdiction can never be waived, and may be raised at any time by the parties or sua sponte by an appellate court." *Pennhurst Medical Group, P.C. v. Department of Public Welfare,* 796 A.2d 423, 425 n. 2 (Pa.Cmwlth.2002), citing *Commonwealth v. Little,* 455 Pa. 163, 314 A.2d 270 (1974). *See also West Mifflin Area School District v. Board of Property Assessment Appeals & Review,* 844 A.2d 602 (Pa.Cmwlth.2004).

5. Our scope of review of a Commission matter is whether the adjudication is in accordance with law, whether constitutional rights have been violated or whether the findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

(a) If the unlawful practice complained of is eliminated by conference, conciliation and persuasion, the material terms of the adjustment may be incorporated into a conciliation agreement.

(b) A conciliation agreement *or other predetermination settlement agreement* **may** be entered as a consent order by the Commissioners if all parties consent to the entry and will have the same force and effect as a final order issued by the Commission after a hearing on the merits of a complaint. (Emphasis added.)

If, however, the parties have chosen for some reason not to reduce the settlement agreement to a consent order, then Section 42.73 of the Special Rules, 16 Pa.Code § 42.73, sets forth the procedure by which a settlement order applies. It provides:

(a) A party shall have the right to petition the Commission to consider whether another party has complied with the terms of adjustment or settlement, or both.

(b) A party may file a petition under this section regardless of whether a finding of probable cause had been made in the case.

(c) The Commission will consider the petition and take whatever action it deems necessary or appropriate, as justice may require; except that the Commission will not, in any case, enforce an adjustment or settlement which is not in writing and signed by the party against whom enforcement is sought.

Citing *Mechensky v. Pennsylvania Human Relations Commission,* 134 Pa. Cmwlth. 192, 578 A.2d 589 (1990), the Commission argues in its supplemental brief that under this regulation, while it may not have the power to enforce orders or consent orders, it has the power to enforce settlement agreements, including adjudicating the impossibility of perform-

ance or remedy, and its decision is only subject to our appellate review. In *Mechensky,* this Court held that the Commission had authority to interpret and enforce contractual provisions contained in a settlement agreement based on Section 42.73 of the Special Rules to determine whether a respondent has complied with the terms of a settlement agreement and to take any action it deemed necessary. Making no reference to Section 10 of the Act, 43 P.S. § 960, we held that the Commission's power could be inferred from Section 7(d) of the Act, 43 P.S. § 957(d), which gives the Commission the power to adopt, promulgate, amend and rescind rules and regulations to effectuate the Act, and from Section 9(c) of the Act, 43 P.S. § 959(c), which requires the Commission to attempt to eliminate a complained-of discriminatory practice by conference, conciliation and persuasion. We then went on to address defenses to the enforcement of the settlement order in our appellate jurisdiction.

We believe the dichotomy of allowing the Commission to enforce "settlement agreements" not reduced to "consent orders" or just plain "orders" is not a maintainable distinction. This dichotomy is not consistent with other provisions of the Act which require the Commission to seek a court order before it can compel anyone to do anything. *See e.g.,* Section 7(g)(1) of the Act, 43 P.S. § 957(g)(1) (Commission may apply to any court for enforcement of subpoenas); and Section 9.2 of the Act, 43 P.S. § 959.2 (Commission may commence action in Commonwealth Court to seek injunctive relief.) Nothing in the overall statutory scheme allows the Commission to interpose itself as an adjudicator in the enforcement process and take away from the enforcing court the power to make its own independent factual determinations as to why the order should or should not be enforced. Clearly, the Commission does

not have the power to enforce orders or the power to impose any penalties for non-compliance with either a consent order or settlement agreement.[6]

The question then becomes what must one do to enforce a settlement agreement? Normally, a settlement agreement, not reduced to a consent order, is just another contract which is enforceable just as other contracts, i.e., with the filing of a civil action in the appropriate court of common pleas. If settlement agreements involving a dispute under the Human Relations Act would have to be enforced in this manner, though, it would place additional burdens on the parties, especially the party alleging some discriminatory practice because he is often unrepresented and, if represented, would bear the cost of enforcement. While that could be alleviated by reducing all settlement agreements to consent orders, that may frustrate the settlement of disputes because, unlike consent orders, settlements are generally private and do not subject the parties to the jurisdiction of the Commission.

Balancing those interests and recognizing the importance of settling disputes, yet realizing that those agreements had to be enforced, the Commission promulgated Section 42.73 of the Special Rules which, by operation of law, became part of the settlement agreement. While that provi-

sion does not give the Commission, as it now contends, the authority to enforce settlement agreements—because that would be in direct conflict with Section 10 of the Act—that section does provide a procedure by which the Commission can administratively decide whether it wants to aid in the enforcement of the settlement agreement. Once it determines in its administrative capacity (not as an adjudication) [7] that the settlement agreement has not been satisfied, it can reduce the settlement order to a Commission order and then may file a petition with this Court in our original jurisdiction under Section 10 of the Act to enforce the settlement. This outcome allows orders, consent orders and settlement agreements to be enforced in the same manner.

Here, the parties entered into a Settlement Agreement without securing a consent order from the Commission. Because the terms of the Settlement Agreement were not satisfied, as Employer refused to return Complainant to work, Complainant filed a petition under Section 42.73 of the Special Rules seeking the Commission's assistance in enforcing the Settlement Agreement, and the Commission administratively determined that the terms of the Settlement Agreement had not been satisfied. At that point, the Commission, in effect, made the Settlement Agreement a Commission order, and to enforce the or-

---

6. Because an administrative agency only has those powers which the legislature has delegated to it, *Pennsylvania Human Relations Commission v. St. Joe Minerals Corporation, Zinc Smelting Division*, 476 Pa. 302, 382 A.2d 731 (1978), and *Mechensky* did not address the effect of Section 10 of the Act (as well as for the additional reasons stated), I would overrule *Mechensky* and other cases that have followed it, including *News–Chronicle v. Pennsylvania Human Relations Commission*, 672 A.2d 400 (Pa.Cmwlth.1996).

7. When the Commission decides to aid in enforcement, it is not an adjudication subject

to appeal, but merely an administrative decision to bring an enforcement action. An "adjudication" is defined as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 1 Pa.C.S. § 101. The decision to bring an enforcement action does not affect any right that the party has because the rights have already been agreed to in the settlement agreement. All that is decided is that the agreement will now be enforced.

der, it was required to bring a petition to enforce with this Court in our original jurisdiction.

Because courts only have the power to decide issues raised and do not have the power to impair contracts, and only courts have the power of compulsion over a person or entity in enforcing orders, consent orders or settlement decrees, I respectfully dissent.